# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| MARTHILDE BRZYCKI,<br><br>Plaintiff,<br><br>vs.<br><br>HARBORVIEW MEDICAL CENTER, and UNIVERSITY OF WASHINGTON,<br><br>Defendants. | CASE NO.: 2:18-cv-01582-MJP<br><br>**AMENDED COMPLAINT**<br><br>**JURY DEMAND** |

## I. INTRODUCTION

1.1 Plaintiff Marthilde Brzycki brings this lawsuit against Defendants Harborview Medical Center and the University of Washington (collectively, "Harborview"). Harborview subjected Ms. Brzycki to discrimination on the basis of her race and national origin, failed in its duty to reasonably accommodate her disability, and retaliated against her for making internal complaints of discrimination and for filing charges with the Equal Employment Opportunity Commission ("EEOC"), all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") and the Washington Law Against Discrimination, chapter 49.60 RCW ("WLAD").

AMENDED COMPLAINT - 1

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

## II. PARTIES

2.1 Plaintiff Marthilde Brzycki was at all times material to this complaint an employee of Harborview Medical Center within the meaning of Title VII and the WLAD. She is a resident and citizen of Seattle, King County, Washington.

2.2 Defendant Harborview Medical Center was at all times material Ms. Brzycki's "employer" within the meaning of Title VII and the WLAD. Harborview Medical Center is operated by the University of Washington, an agency of the state of Washington. Harborview Medical Center is located in Seattle, King County, Washington.

2.3 Defendant University of Washington ("UW") is an agency of the state of Washington. It operates Harborview Medical Center. It is located in Seattle, King County, Washington.

## III. JURISDICTION AND VENUE

3.1 This Court has original jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1332.

3.2 This Court has supplemental jurisdiction over Plaintiff's WLAD claims pursuant to 28 U.S.C. § 1367.

3.3 Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b).

## IV. FACTS

4.1 Plaintiff Marthilde Brzycki is a native of Haiti and is a Black woman. She immigrated to the United States when she was eleven years old and continues to speak with a strong Haitian accent.

4.2 It is a stereotype of Haitian women that they are subservient and unlikely to stand up for themselves to managers, supervisors, or others in positions of authority.

AMENDED COMPLAINT - 2

4.3     Ms. Brzycki began working at Harborview Medical Center as a part time/per diem registered nurse in 2011. Ms. Brzycki received her Advanced Registered Nurse Practitioner ("ARNP") license in 2014. In January 2015, she began working as a full-time Healthcare Specialist in Harborview's Stroke Program, which includes the UW Medicine Stroke Center at Harborview and the Stroke Clinic located across the street from the main Harborview hospital. Harborview did not provide Ms. Brzycki with a job description that defined her duties and responsibilities.

4.4     Ms. Brzycki was the only Black and Haitian-American ARNP and was one of very few Black employees working in the Stroke Center and Stroke Clinic. The other ARNPs working in the Stroke Center and Stroke Clinic were all White women and, on information and belief, were of American national origin.

4.5     Ms. Brzycki had an excellent record of patient care in the Stroke Program. She received many positive comments from her patients and uniformly positive feedback from the neurologists and physicians with whom she worked.

4.6     As Stroke Healthcare Specialist, Ms. Brzycki reported to the Stroke Program Manager. For the first eight months of her employment in the Stroke Program, Ms. Brzycki reported to Vicki Johnson. Ms. Brzycki and other employees observed Ms. Johnson and Resource Nurse Dawn Drury making racially charged statements about minority staff members and patients. In August 2015, Ms. Brzycki emailed a complaint about Ms. Johnson and Ms. Drury's conduct to the University of Washington's University Complaint Investigation and Resolution Office ("UCIRO"). UCIRO did not respond to Ms. Brzycki regarding her complaint. Ms. Johnson and Ms. Drury both left Harborview shortly thereafter.

4.7     After Ms. Johnson left, Harborview hired an interim Program Manager. The

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

interim manager left Harborview abruptly after only a few months. During the period when the Stroke Program lacked consistent leadership, Ms. Brzycki worked with other managers and directors, including Stroke Center Directors Dr. David Tischwell and Dr. Kyra Becker, to clarify her role and priorities at the Stroke Center. Working with Dr. Tischwell and Dr. Becker, Ms. Brzycki developed a work schedule that placed highest priority on patient care and on ensuring that Ms. Brzycki was able to see as many patients as possible. She worked independently during this time period, consistent with the practices followed by the White/American ARNPs who also worked in the Stroke Center and Stroke Clinic. She also worked unpaid overtime hours during this period with the knowledge and acquiescence of management.

4.8 In August 2016, Harborview hired Tricia Roland as Stroke Program Manager. From the beginning, Ms. Roland treated Ms. Brzycki differently from other providers and members of staff who were not Black and who were not natives of Haiti. Ms. Roland confronted Ms. Brzycki and asked her, "How did you get this job? It's a very challenging position," in a disbelieving tone. Ms. Roland told Ms. Brzycki on multiple occasions to be grateful for her job, and frequently made negative comments about Ms. Brzycki's clothing. She made comments relating to Ms. Brzycki's national origin, such as asking her to cook "island food" and expressing visible frustration when Ms. Brzycki refused to do so. Ms. Brzycki and other employees also heard statements by Ms. Roland that they interpreted as discriminatory toward members of minority groups.

4.9 Ms. Roland has worked in Haiti and is married to a Black man who is a native of Haiti. Ms. Roland expected Ms. Brzycki's conduct in the workplace to be consistent with the stereotype of Haitian women as subservient to people in authority. Ms. Brzycki, however, was unafraid to question her managers and supervisors when she believed that their actions were

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

unjust or unfair, disappointing Ms. Roland's expectation.

4.10    Ms. Roland soon began to micromanage Ms. Brzycki, to scrutinize Ms. Brzycki's schedule, to assign her tasks that were more appropriate for the facility's Stroke Resource Nurse rather than for a Healthcare Specialist, and to threaten Ms. Brzycki's job when she did not respond immediately to non-urgent pages.

4.11    The three White/American ARNPs who worked in the Stroke Center were not subjected to the level of questioning and micromanagement that Ms. Roland imposed on Ms. Brzycki.

4.12    On November 17, Ms. Roland gave Ms. Brzycki a letter initiating an investigation regarding alleged "discrepancies in [her] attendance and hours of work, and concerns with [her] work performance." Although she and Ms. Brzycki had disagreed about prioritization of patient care and meetings, Ms. Roland had never directly discussed with Ms. Brzycki her expectations for Ms. Brzycki's work hours, attendance, or job priorities. Ms. Brzycki was upset and humiliated when she received the letter.

4.13    On November 18, Ms. Brzycki submitted a written complaint regarding Ms. Roland's treatment of her to Assistant Program Administrator of Patient Care Services Kathy Hare and Director of Healthcare Specialists Kelly Paananen. In her letter, Ms. Brzycki alleged that Ms. Roland had subjected her to prejudice and a punitive culture in the Stroke Center. Ms. Brzycki also emailed UCIRO to complain that Ms. Roland had been subjecting her and others to discrimination and bullying.

4.14    Ms. Brzycki began to feel the effects of stress resulting from her discriminatory work environment, including shortness of breath and dizziness. She began to see counselor Reid

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

Stell regarding her workplace stress on November 23. She had never before sought mental health counseling or received any mental health diagnosis.

4.15 On November 28, Ms. Brzycki and her Union representative met with Human Resources Consultant Kim Francis regarding her complaints about Ms. Roland's discriminatory conduct. That same month, Ms. Brzycki met with a UCIRO representative regarding her November 18 email. The representative told her that "managers request investigations all the time" and "it could all be a misunderstanding." There was no further follow-up from UCIRO.

4.16 The first of three investigatory interviews regarding Ms. Roland's November 17 investigation notice took place on December 5. At this meeting, Ms. Brzycki learned for the first time that Ms. Roland had accused her of stealing time and being unavailable at work. Although the meeting lasted three hours, Ms. Brzycki did not have an opportunity to defend herself against the charges that Ms. Roland had brought against her. Ms. Brzycki provided documents, including her job description, work schedule, and details about the timing of her work, to refute Ms. Roland's allegations.

4.17 The day after the investigatory interview, Ms. Brzycki began to feel sick. Her vision was blurry, and she felt lightheaded. She left work and saw her doctor, who diagnosed high blood pressure, panic disorder, and anxiety. Ms. Brzycki had never before received these diagnoses. Her medical providers placed her on medical leave for treatment for the anxiety and panic disorder brought on by her work environment.

4.18 On January 11, 2017, while Ms. Brzycki was still on leave, Ms. Francis sent Ms. Brzycki a letter in which she stated that Ms. Brzycki had "indicated" during their November 28 meeting that the incidents she described were likely not harassment, but instead were the result of management changes. Ms. Francis also stated in her letter she was "unable to substantiate

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

allegations of harassment" after speaking with both Ms. Roland and Ms. Hare. Ms. Francis's letter mischaracterizes Ms. Brzycki's statements in the November meeting; she did not concede that Ms. Roland's conduct was not discriminatory.

4.19 On January 17, 2017, Ms. Brzycki's medical provider released Ms. Brzycki to return to work effective February 2. Her provider stated that Ms. Brzycki required the accommodation of a private, quiet place to work to avoid anxiety in the workplace.

4.20 Rather than engage in the interactive process regarding the request for accommodation, Harborview simply told Ms. Brzycki to close the door of her office. When Ms. Brzycki explained why her office would not meet her need for a private place to work, she was told that Harborview would "look into it." Ms. Brzycki, however, received no further response regarding her request for a private, quiet place to work. Ms. Brzycki returned to work on February 2 without the accommodation.

4.21 Ms. Roland and Human Resources Consultant Nola Balch held a second investigatory interview with Ms. Brzycki on February 13. On February 14, Harborview placed Ms. Brzycki on paid administrative leave "pending the outcome of an ongoing workplace investigation." A third investigatory interview was held on February 16, while Ms. Brzycki was on administrative leave.

4.22 Ms. Brzycki heard nothing more from Harborview for nearly two months. On April 5, Ms. Brzycki reached out to Human Resources Director Jennifer Petritz regarding her concerns that Ms. Roland's investigation was discriminatory and retaliatory. She informed Ms. Petritz that she intended to file an EEOC charge. On or about April 7, Ms. Brzycki again reached out to UCIRO regarding the allegations of discrimination that she had described in her November 18 email.

AMENDED COMPLAINT - 7

4.23 Ms. Brzycki returned to work from her administrative leave on April 18. That same day, Ms. Roland issued Ms. Brzycki a Step C Final Counseling letter for unsatisfactory work performance and unprofessional conduct. Ms. Brzycki had never before been subject to discipline during her tenure at Harborview. By issuing Step C discipline, Harborview skipped the first two steps of the progressive discipline process set forth in the Collective Bargaining Agreement between Harborview and Ms. Brzycki's union, SEIU Healthcare 1199 NW, and moved directly to the last step of discipline that precedes termination. The union filed a grievance challenging the discipline. It was not until Harborview issued the Step C discipline letter that it finally provided Ms. Brzycki with a job description.

4.24 Ms. Roland also imposed on Ms. Brzycki a punitive requirement under which Ms. Brzycki was to complete all progress notes and documentation regarding her Stroke Clinic patients on the same day the patient visited the clinic, contrary to Harborview practice allowing Healthcare Specialists 48 to 72 hours to complete progress notes and documentation.

4.25 Ms. Brzycki was distraught that Ms. Roland had issued the Step C discipline and punitive documentation requirement. She began to have panic attacks at work. She again asked for the accommodation of being able to work in a quiet, private space. Harborview, however, again failed to engage in the interactive process to determine a reasonable accommodation.

4.26 On April 26, 2017 Ms. Brzycki was placed on medical leave through July 1 for treatment for "increased anxiety, panic attacks, and elevated blood pressure associated with work."

4.27 On May 4, Ms. Brzycki filed charge No. 551-2017-01080 with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged discrimination on the basis of her race and national origin and retaliation for making complaints of discrimination.

AMENDED COMPLAINT - 8

Because of Ms. Brzycki's medical leave, however, it was not until July that Ms. Brzycki completed an intake interview with UCIRO regarding her April complaints of discrimination and retaliation.

4.28    In early July, Ms. Brzycki's medical provider released her to return to work on a reduced schedule of 20 hours per week, with no more than five hours of work per day. On June 30, Ms. Roland emailed Ms. Brzycki a part-time work schedule that she developed without input from Ms. Brzycki.

4.29    Ms. Brzycki responded the patient load she was expected to complete on her clinic days was too great for a five-hour workday. She offered alternatives that would enable her to meet work expectations. Ms. Roland, however, flatly refused to engage in an interactive process with Ms. Brzycki regarding the schedule, stating that her proposed schedule was "not up for negotiation."

4.30    Ms. Brzycki returned to work on July 3. Between July 6 and July 11, Ms. Roland repeatedly threatened Ms. Brzycki when she tried to raise concerns about her workload, her health, or patient safety. She told Ms. Brzycki that she could be fired if she did not follow the schedule Ms. Roland had set.

4.31    On July 11, Ms. Brzycki was unable to complete the work that Ms. Roland had required within a five-hour workday. She had to work 7.5 hours that day, without breaks, to meet Ms. Roland's prescribed workload, contrary to the work restrictions placed by her medical provider.

4.32    On July 12, Ms. Brzycki had a pre-scheduled appointment with her counselor. Ms. Roland told Ms. Brzycki in email to cancel her appointment and verbally threatened her with

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

disciplinary action if she attended her appointment. Ms. Brzycki attended her appointment. Her counselor again placed Ms. Brzycki on medical leave due to acute anxiety and panic attacks.

4.33     Ms. Brzycki complained to Ms. Petritz that Ms. Roland's "non-negotiable" part-time schedule was retaliatory. Ms. Petritz defended Ms. Roland's schedule, and did not address Ms. Brzycki's concerns about retaliation or engage in an interactive process to determine a more workable schedule for Ms. Brzycki in light of her mental health disability.

4.34     On August 4, Mr. Stell informed UW that Ms. Brzycki would be released to return to work effective August 15, with accommodations including a part-time schedule and limited communications between Ms. Roland and Ms. Brzycki.

4.35     No one from Harborview contacted Ms. Brzycki or Mr. Stell about the request for accommodations. Anticipating that her accommodations would be provided, Ms. Brzycki returned to work on August 15 and started her day, as she ordinarily would, by going on morning rounds. Ms. Hare, however, pulled her out of rounds and told her flatly that Harborview would not accommodate her.

4.36     Ms. Hare took Ms. Brzycki into a meeting with Ms. Roland and Ms. Balch. She reiterated that Harborview would not grant Ms. Brzycki's request for accommodations and told her to pack up her things and go home.

4.37     On August 16, Ms. Brzycki filed EEOC charge No. 551-2017-01858, in which she alleged failure to accommodate, discrimination on the basis of disability, and retaliation for having filed charge No. 551-2017-01080 in May 2017.

4.38     On October 18, Mr. Stell released Ms. Brzycki to return to work effective October 30. Mr. Stell again requested that Harborview provide Ms. Brzycki a "quiet/private area when doing office work." On November 7, for the first time since Ms. Brzycki first requested the

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

accommodation in January, Harborview held an interactive accommodation meeting to discuss options for accommodating Ms. Brzycki's need for a quiet, private space to work.

4.39 Between April and October 2017, Ms. Brzycki and her Union repeatedly tried to schedule a hearing regarding Ms. Brzycki's grievance of the Step C discipline. Harborview repeatedly refused to schedule the hearing.

4.40 During the spring and fall of 2017, Ms. Brzycki applied for ARNP positions elsewhere in the UW Medical System in an effort to find a healthier working environment. Because of the retaliatory and excessive Step C discipline in her file, however, her attempts to find other employment at UW Medicine stalled.

4.41 In light of the continued stress and anxiety caused by Harborview's failure to accommodate her disability and ongoing discrimination and retaliation, and in light of her inability to transfer due to the Step C discipline in her file, Ms. Brzycki felt she had no other choice to protect her health but to leave Harborview.

4.42 Ms. Brzycki resigned her position at Harborview in late November 2017. She now works at the Veterans Affairs Puget Sound Healthcare System in Seattle.

4.43 Ms. Brzycki was replaced as Stroke Healthcare Specialist by an ARNP who is, on information and belief, White and of American national origin. Ms. Roland does not subject Ms. Brzycki's replacement to the same type of micromanagement, scrutiny, and hostility that Ms. Brzycki experienced.

4.44 On May 30, 2018, Plaintiff sent a letter regarding her legal claims to the Washington State Attorney General's Office. The Washington State Attorney General's Office construed Ms. Brzycki's letter as a notice of tort claim and forwarded it to the University of Washington's Risk Management Department for investigation.

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

4.45　On August 8, 2018, the EEOC issued right-to-sue letters for charge No. 551-2017-01080 and charge No. 551-2017-01858.

## V.　CAUSE OF ACTION ONE:
## DISPARATE TREATMENT ON THE BASIS OF RACE AND NATIONAL ORIGIN IN VIOLATION OF TITLE VII

5.1　Plaintiff realleges, as if fully set forth herein, paragraphs 1.1 through 4.45.

5.2　Under Title VII, it is an unlawful employment practice for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment because of such individual's race or national origin.

5.3　Ms. Brzycki is Black and of Haitian national origin.

5.4　Defendants violated Title VII by subjecting Ms. Brzycki to micromanagement, hostile comments, investigation, and excessive discipline because of her race and/or her national origin.

5.6　As a direct and proximate result of Defendants' unlawful conduct, Ms. Brzycki suffered lost wages and financial benefits of employment, emotional pain, grief, humiliation, and other damages in amounts to be proved at trial.

## VI.　CAUSE OF ACTION TWO:
## DISPARATE TREATMENT ON THE BASIS OF RACE AND NATIONAL ORIGIN IN VIOLATION OF THE WLAD

6.1　Plaintiff realleges, as if fully set forth herein, paragraphs 1.1 through 5.6.

6.2　The WLAD prohibits employers from discriminating against any person in compensation or in other terms or conditions of employment because of race and national origin.

6.3　Ms. Brzycki is Black and of Haitian national origin.

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

6.4 Defendants violated the WLAD because Ms. Brzycki's race and/or national origin were a substantial factor in Defendants' actions of subjecting Ms. Brzycki to micromanagement, hostile comments, investigation, and excessive discipline.

6.5 As a direct and proximate result of Defendants' unlawful conduct, Ms. Brzycki suffered lost wages and financial benefits of employment, emotional pain, grief, humiliation, and other damages in amounts to be proved at trial.

## VII. CAUSE OF ACTION THREE: FAILURE TO ACCOMMODATE IN VIOLATION OF THE WLAD

7.1 Plaintiff repeats, as if fully set forth herein, paragraphs 1.1 through 6.5

7.2 The WLAD requires employers to engage in an interactive process and to reasonably accommodate employees with disabilities unless such accommodation would pose an undue burden.

7.3 Ms. Brzycki suffered from anxiety, panic disorder, and high blood pressure, all of which are disabilities under the WLAD.

7.4 Ms. Brzycki and her healthcare providers repeatedly provided Defendants with notice of her disabilities and requested the reasonable accommodations of a quiet space to work and a part-time schedule.

7.5 Defendants violated the WLAD by failing to engage in the interactive process regarding Ms. Brzycki's requests for the accommodations of a quiet place to work and a reasonable part-time schedule.

7.6 As a direct and proximate result of Defendants' unlawful conduct, Ms. Brzycki suffered exacerbation of her disabilities, emotional pain, grief, humiliation, and other damages in amounts to be proved at trial.

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

## VIII. CAUSE OF ACTION FOUR: RETALIATION IN VIOLATION OF TITLE VII

8.1 Plaintiff re-alleges, as if fully set forth herein, paragraphs 1.1 through 7.6.

8.2 Title VII prohibits an employer from retaliating against an employer who has opposed disparate treatment on the basis of race and/or national origin.

8.3 Ms. Brzycki engaged in activities protected under Title VII when she made internal complaints of discrimination to Harborview managers and to UCIRO and when she filed her EEOC charges.

8.4 Defendants violated Title VII by subjecting Ms. Brzycki to excessive discipline and punitive work requirements, by requiring an unworkable and unnegotiable part-time schedule in response to Ms. Brzycki's request for accommodation, and by subjecting Ms. Brzycki to micromanagement and threats because of her protected activities.

8.5 As a direct and proximate result of Defendants' unlawful conduct, Ms. Brzycki suffered lost wages and financial benefits of employment, emotional pain, grief, humiliation, and other damages in amounts to be proved at trial.

## IX. CAUSE OF ACTION FIVE: RETALIATION IN VIOLATION OF THE WLAD

9.1 Plaintiff repeats, as if fully set forth herein, paragraphs 1.1 through 8.5.

9.2 The WLAD prohibits employers from discriminating against any person because he or she has opposed any practice forbidden by the WLAD.

9.3 Ms. Brzycki engaged in activities protected under the WLAD when she made internal complaints of discrimination to Harborview managers and to UCIRO and when she filed her EEOC charges.

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

9.4     Defendants violated the WLAD because Ms. Brzycki's protected activities were a substantial factor in Defendants' actions of subjecting Ms. Brzycki to excessive discipline and punitive work requirements, requiring her to work an unworkable and unnegotiable part-time schedule in response to her request for accommodation, and micromanaging and threatening Ms. Brzycki.

9.5     As a direct and proximate result of Defendants' unlawful conduct, Ms. Brzycki suffered lost wages and financial benefits of employment, emotional pain, grief, humiliation, and other damages in amounts to be proved at trial.

## X.     PRAYER FOR RELIEF

Based upon the foregoing, Plaintiff asks this Court for the following relief:

(a)     Damages including, but not limited to, lost wages, including front and back pay; lost medical, pension, and retirement benefits; and other lost employment benefits, in amounts to be proved at trial;

(b)     An award of damages to compensate Ms. Brzycki for the harm she has suffered including, but not limited to, injury to her reputation in her profession, mental anguish, humiliation, and embarrassment, in an amount to be proved at trial;

(c)     Removal of the Step C discipline from Ms. Brzycki's personnel record;

(d)     Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 12205, RCW 49.48.030 and 49.60.030;

(e)     Pre- and post-judgment interest at the maximum rate allowed by law;

(f)     A declaratory judgment that Defendants' actions violated Title VII and the WLAD; and

(g)     Such other and further relief as this Court shall deem fair and equitable.

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

| | |
|---|---|
| 1 | DATED this 24th day of October, 2019. |
| 2 | |
| 3 | FRANK FREED SUBIT & THOMAS LLP |
| 4 | |
| 5 | By: */s/ Christie J. Fix* |
| | Christie J. Fix, WSBA # 40801 |
| 6 | Attorneys for Plaintiff Marthilde Brzycki |
| | 705 Second Avenue, Suite 1200 |
| 7 | Seattle, WA 98104 |
| | Phone: (206) 682 6711 |
| | Email: cfix@frankfreed.com |

AMENDED COMPLAINT - 16

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Seth J. Berntsen,
>Addelle Greenfield
>Foster Garvey, P.C.
>1191 Second Avenue, 18th Floor
>Seattle, WA  98101-2939
>(206) 464-3939
>sberntsen@gsblaw.com
>Attorneys for Defendants

I hereby declare under the penalty of perjury of the laws of the State of Washington that the foregoing is true and correct.

DATED at Seattle, Washington on this 24th day of October, 2019.

>*/s/Julie Larm-Bazzill*
>Julie Larm-Bazzill

AMENDED COMPLAINT - 17

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711