THE HONORABLE MARSHA J. PECHMAN

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARTHILDE BRZYCKI,<br><br>                  Plaintiff,<br><br>v.<br><br>HARBORVIEW MEDICAL CENTER and UNIVERSITY OF WASHINGTON,<br><br>                  Defendants. | CASE NO. 2:18-cv-01582-MJP<br><br>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**NOTING DATE: DECEMBER 20, 2019**<br><br>**ORAL ARGUMENT REQUESTED** |

## I.  INTRODUCTION AND RELIEF REQUESTED

In June and July 2017, Defendants Harborview Medical Center ("Harborview") and the University of Washington (collectively, "Defendants") failed outright in their duty to accommodate Plaintiff Marthilde Brzycki's disability as required by the Washington Law Against Discrimination, chapter 49.60 RCW.  In April 2017, Ms. Brzycki, a Health Care Specialist working in Harborview's Stroke Center, was placed on medical leave due to anxiety, panic attacks, and high blood pressure.  In late June 2017, Ms. Brzycki's health care provider released her to return to work in July on a part-time schedule. Without seeking input from Ms. Brzycki or her health care provider, Ms. Brzycki's manager developed a schedule that required

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

Ms. Brzycki to see <u>more</u> patients during a five-hour clinic day than she saw when she worked full-time. Ms. Brzycki expressed concerns about her ability to see a full-time load of patients while on a part-time schedule and proposed an alternative. Rather than engage in the interactive process with Ms. Brzycki, her manager told her that the schedule was "not up for negotiation." Ms. Brzycki returned to work in early July 2017 but, as she feared, was unable to see a full slate of six patients in a five-hour day. Her mental health counselor placed her back on medical leave due to her anxiety. Because there is no genuine issue of material fact regarding Defendants' failure to accommodate her disability, Ms. Brzycki respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on her claim that Defendants failed to accommodate her disability in June and July 2017.

## II.   FACTS

### A.   Summary of Background Facts[1]

Ms. Brzycki is a Black woman who was born in Haiti and moved to New York City when she was eleven years old. Declaration of Marthilde Brzycki in Support of Plaintiff's Motion for Partial Summary Judgment ("Brzycki Decl.") ¶ 2. She still speaks with a strong Haitian accent. *Id.*

Ms. Brzycki began working for Harborview as a part-time per-diem registered nurse in 2011. *Id.* ¶ 3. In January 2015, after completing her master's degree and receiving her Advanced Registered Nurse Practitioner ("ARNP") license, she began to work as a Stroke Health Care Specialist in Harborview's Stroke Center. *Id.* Ms. Brzycki was not provided a job description when she began to work as Stroke Health Care Specialist, but she understood her

---

[1] Because this Motion focuses on Defendants' failure to accommodate Ms. Brzycki's disability in June and July 2017, Ms. Brzycki provides here only a high-level summary of the background leading up to her June 2017 request for accommodation. Ms. Brzycki will provide a more detailed discussion of the factual background of this case in her Opposition to Defendants' Motion for Summary Judgment.

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798 ~ (206) 682-6711

primary duties to include seeing stroke patients who had been discharged from Harborview and the University of Washington Medical Center approximately two to four weeks post-discharge for follow-up appointments in Harborview's Stroke Clinic and coordinating follow-up care for the patients until they could be seen by a stroke neurologist. *Id.* ¶ 4. This work required her to spend time preparing for her patients and writing chart notes after the patients' appointments were complete. *Id.* ¶ 5. Her patients often had complex medical issues, and because many of them were poor and did not have primary care physicians, part of her work included ensuring that they had access to adequate health care. *Id.* Because of these issues, she generally spent between 30 minutes to an hour preparing for a patient appointment and 45 minutes to an hour writing chart notes after the appointment. *Id.*

There was substantial turnover in the management of the Stroke Center during Ms. Brzycki's first two years. *Id.* ¶ 6. The first Stroke Program Manager to whom Ms. Brzycki reported, Vicki Johnson, left Harborview in or about December 2015. *Id.* An interim Stroke Program Manager, Miryah Hibbard, left Harborview in approximately May 2016. *Id.* Throughout this time, Ms. Brzycki worked with the Stroke Program Managers, the Stroke Center Directors Kyra Becker M.D. and David Tirschwell M.D., and higher-level managers such as Assistant Administrator of Patient Care Services Kathy Hare and Director of Health Care Specialists Kelly Paananen to define her job duties and responsibilities. *Id.*

In August 2016, Harborview hired Tricia Roland[2] as Stroke Program Manager. *Id.* ¶ 7. Ms. Roland had worked in Haiti and was married to a Haitian man. Declaration of Christie J. Fix in Support of Plaintiff's Motion for Partial Summary Judgment ("Fix Decl.") Ex. I

---

[2] Ms. Roland has since changed her last name to O'Donohue. Fix Decl. Ex. L (O'Donohue Dep.) at 6:10-17. Because her last name was Roland at the time the events at issue in this Motion took place, and because her name appears as "Tricia Roland" in the relevant documents, this brief refers to her as "Ms. Roland."

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798 ~ (206) 682-6711

(O'Donohue Dep.) at 22:16-23:14; 26:6-7. Shortly after Ms. Roland began working in the Stroke Center, she began to ask Ms. Brzycki to cook her Haitian food, to invite her to gatherings of Haitian people, and to speak Creole with her. Ms. Brzycki declined to do so. *Id.* ¶ 8. Ms. Roland soon began to micromanage Ms. Brzycki's work, to scrutinize her schedule and whereabouts, to interrupt her by banging on her door while she was working, and to assign Ms. Brzycki work that had traditionally been performed by the Stroke Center's Resource Nurse. *Id.* ¶ 9 When Ms. Brzycki tried to explain her job to Ms. Roland, Ms. Roland dismissed her or reacted angrily. *Id.*

Ms. Roland, working with Human Resources Consultant Nola Balch, initiated an investigation of Ms. Brzycki's time and attendance in November 2016. Fix Decl. Ex. I (O'Donohue Dep.) at 89:2-11. During this period, Ms. Brzycki reached out to Ms. Hare and Ms. Paananen to ask for help clarifying her role and responsibilities. Brzycki Decl. ¶ 10. On November 17, Ms. Roland issued to Ms. Brzycki a letter informing her that an investigatory meeting had been scheduled on December 5 regarding Ms. Brzycki's time and attendance. *Id.* ¶ 11. On November 18, Ms. Brzycki complained to Harborview management and to the University Complaint Investigation and Resolution Office ("UCIRO") that Ms. Roland's actions against her were harassing, bullying, and prejudicial against her on the basis of her national origin and race. *Id.* ¶ 12.

**B.  Facts Relevant to this Motion**

The investigatory meeting regarding Ms. Brzycki's time and attendance took place as scheduled on December 5. Brzycki Decl. ¶ 14. After the meeting, Ms. Brzycki began to feel sick. Brzycki Decl. ¶ 14. Her vision was blurry and she felt light-headed. *Id.* She took her blood pressure and found that it was much higher than normal. *Id.* On December 7, Ms. Brzycki saw

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

her health care provider, Elizabeth Schuringa, ARNP, who diagnosed Ms. Brzycki with work-related stress, anxiety, and panic-type disorder. Fix Decl. Ex. A (Schuringa Dep.) at 19:25-22:5; 23:8-24:10. Ms. Schuringa placed Ms. Brzycki on medical leave for four weeks to seek treatment for her anxiety and panic-type disorder. Fix Decl. Ex. B at UWMB002925. On January 3, Ms. Schuringa extended Ms. Brzycki's medical leave. Fix Decl. Ex. C.

On January 17, Ms. Schuringa released Ms. Brzycki to return to work on February 2. Fix Decl. Ex. D. She requested for Ms. Brzycki the accommodation of a "private quiet place to do her work to avoid anxiety." *Id.* Ms. Brzycki returned to work on February 2. Brzycki Decl. ¶ 15.

On February 14, after a second investigatory meeting, Harborview placed Ms. Brzycki on paid administrative leave pending the completion of the investigation initiated by Ms. Roland. *Id.* ¶ 16. The investigation resulted in a decision to issue to Ms. Brzycki a "Step C Final Counseling" and detailed performance plan. *Id.* ¶ 17; *see generally* Fix Decl. Ex. V. "Step C" is the highest level of discipline short of termination under the Collective Bargaining Agreement between Harborview and Ms. Brzycki's Union. Brzycki Decl. ¶ 17. For the first time, Harborview also provided Ms. Brzycki a job description. Fix Decl. Ex. V at UEMB00002674-78.

Ms. Brzycki's paid administrative leave ended on April 18, and she returned to work. Brzycki Decl. ¶ 18. After discussing the Step C discipline and performance plan with management, Ms. Brzycki's feelings of stress and anxiety quickly returned. *Id.* On April 26, Rachel Sternoff, ARNP, diagnosed Ms. Brzycki with anxiety, insomnia, subclinical hyperthyroidism, and elevated blood pressure. Fix Decl. Ex. E (Sternoff Dep.) at 21:6-17. She placed Ms. Brzycki back on medical leave through June 1, 2017. Fix Decl. Ex. F. In the request

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798 ~ (206) 682-6711

for leave, Ms. Sternoff wrote that Ms. Brzycki was "having increased anxiety with panic attacks and elevated blood pressure associated with work. She needs 8 weeks off of work to reduce stress. The anxiety is affecting her work, sleep, blood pressure and quality of life." *Id.* at UWMB002903. She later extended Ms. Brzycki's medical leave to July 1, 2017. Fix Decl. Ex. G. On June 27, 2017, Ms. Sternoff released Ms. Brzycki to return to work on July 1, 2017, with a part-time schedule of 20 hours per week for two months. Fix Decl. Ex. H at UWMB002894. On the request form, she again wrote that Ms. Brzycki was "having anxiety with panic attacks and elevated blood pressure associated with work stress." *Id.* at UWMB002983.

Harborview Leave Specialist Kim Francis received Ms. Sternoff's request for a part-time return to work schedule for Ms. Brzycki. Fix Decl. Ex. I (Francis Dep.) at 56:17-57:1. The Leave Specialist's role is to review incoming requests for medical leave and accommodations; to approve or deny the requests based on regulations and University policy; and to correspond with employees, health care providers, and department management as part of that process. *Id.* at 11:14-21.

On June 28, 2017, Ms. Francis emailed Ms. Roland to ask if Ms. Roland's department could accommodate Ms. Brzycki's request for a reduced schedule. *Id.* at 58:10-18; Fix Decl. Ex. J at UWMB00001632. Ms. Roland replied that she was "looking at the needs of the department to see how we can make this work for everyone." Fix Decl. Ex. J at UWMB00001631.

On June 30, 2017, Ms. Roland emailed a 20 hour per week schedule to Ms. Brzycki, copying Ms. Francis, Ms. Balch, Dr. Tirschwell, Ms. Hare, and Ms. Paananen. Fix Decl. Ex. M. Ms. Roland did not send the schedule to Ms. Francis for review before forwarding it to Ms.

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

Brzycki. Fix Decl. Ex. I (Francis Dep.) at 59:17-60:6. She also did not discuss the proposed schedule with Ms. Brzycki before sending it to her. Brzycki Decl. ¶ 20.

Ms. Roland's schedule provided that after Ms. Brzycki's first week back to work, a regular schedule would go into place in which Ms. Brzycki would be expected to work five hours per day, four days per week, with Thursdays off. Fix Decl. Ex. M at UWMB005121. The Tuesday schedule required Ms. Brzycki to see six patients in the Stroke Clinic during the five-hour workday. *Id.* The schedule required Ms. Brzycki to be in rounds and completing inbasket tasks on Mondays and to be in clinic all day on Tuesdays. *Id.* The schedule did not set aside time for Ms. Brzycki to prepare for her Tuesday clinic appointments.

Before she went on medical leave, Ms. Brzycki had ordinarily scheduled five patients during a Tuesday clinic day while working full time. Brzycki Decl. ¶ 21. Ms. Brzycki also needed time prepare for each patient by reviewing his or her chart notes and to complete chart notes after the patient visit. *Id.* Because of the complexity of the patients' health status, and the frequent need to address access to care issues for patients who did not have primary health care providers, preparing for a patient visit could take between 30 minutes to an hour. *Id.* Thus, the six-patient day required Ms. Brzycki to do as much—if not more—work in a five-hour day as she would normally do in an eight-hour day. *Id.*

Ms. Brzycki responded to Ms. Roland's email later that same day. Fix Decl. Ex. N. Her response was copied to the same individuals who were copied on Ms. Roland's email attaching the part-time schedule, including Ms. Francis. *Id.* She wrote, "Unfortunately I cannot handle working part-time and seeing 6 patient [sic] on a clinic day; which is more than my usual load at this time. And based on your workflow, I will not have prep time for Tuesdays clinic." *Id.* She proposed, instead, that she be scheduled to see three to four patients on Tuesdays. *Id.*

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

Ms. Roland refused to discuss Ms. Brzycki's concerns with her. *See* Fix Decl. Ex. O. Instead, in an email to Ms. Brzycki, she insisted that the schedule she developed was reasonable, and told Ms. Brzycki that the schedule was "not up for negotiation." *Id.* Her response did not address Ms. Brzycki's concerns about needing time to prepare for clinic patients. *Id*. Ms. Roland did not copy Ms. Francis, the Leave Specialist responsible for managing Ms. Brzycki's leave and accommodations requests, on her response to Ms. Brzycki. *Id.*

Ms. Francis did not have an opportunity to react to Ms. Roland's response to Ms. Brzycki because she was not copied on Ms. Roland's email. During her deposition, she testified that Ms. Roland's response to Ms. Brzycki's email was not consistent with how the University of Washington handled disability accommodations. Fix Decl. Ex. I (Francis Dep.) at 62:3-18. She testified that "at any point in time, the department or the employee could re-engage in the process." *Id.* at 62:18-20. She stated that as Leave Specialist she "would have re-engaged in the disability accommodation process and seen if there were other modifications to that schedule that would have worked for both the employee and/or the department." *Id.* at 62:22-63:2. She testified that that process did not happen in this case. *Id.* at 62:3-5.

Ms. Roland testified that she removed Ms. Francis from her response because Ms. Balch—with whom she had worked during the investigation of Ms. Brzycki's time and attendance between November 2016 and April 2017—believed "it was no longer about her accommodation" but was instead "about work performance." Fix Decl. Ex. L (O'Donohue Dep.) at 173:24-174:6. Ms. Roland testified, "Well, we had met the accommodation with the

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 8
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

modified schedule, and going back to Mattie's previous email, this was just more of the pushback that was how Mattie engaged in conversations with me." *Id.* at 174:7-12.[3]

Ms. Brzycki returned to work on July 3. On July 11, Ms. Brzycki's concerns about Ms. Roland's non-negotiable schedule proved to be well-founded. All six of the patients scheduled for Tuesday clinic appeared for their appointments that day. Brzycki Decl. ¶ 24. Ms. Brzycki was unable to see all of the patients in the limited window available to her. *Id.* Rather than finishing clinic at 5:00 p.m., she worked until 7:00 p.m. with no meal or rest breaks and she was unable to complete her chart notes. *Id.* As a result, her workday far exceeded the five hours she was scheduled to work that day. Ms. Brzycki felt anxious and sick, her blood pressure was again high, and she felt like she was falling apart. *Id.*

On the morning of July 12, Ms. Brzycki, distraught after her difficult day in clinic, sent an email to Director of Medical Centers Human Resources Jennifer Petritz in which she complained about Ms. Roland's non-negotiable schedule. Brzycki Decl. ¶ 25; Fix Decl. Ex. Q at UWMB010957-58. Ms. Petritz responded that she would look into her concerns. Fix Decl. Ex. Q at UWMB010957.

Later that morning, Ms. Brzycki saw her counselor, M. Reid Stell, LMHC, for a pre-planned appointment. Brzycki Decl. ¶ 25. Mr. Stell placed Ms. Brzycki back on medical leave due to her anxiety. Fix Decl. Ex. S.

On July 13, Ms. Roland sent Ms. Petritz an email regarding her "justification" for Ms. Brzycki's part-time schedule. Fix Decl. Ex. P. The purported "justification," however, reveals

---

[3] Ms. Brzycki used the nickname "Mattie" with her coworkers.

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 9
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

that Ms. Roland was not considering Ms. Brzycki's need for an effective disability accommodation when she developed the schedule.

First, Ms. Roland noted "ongoing issues with Mattie working overtime due to not appropriately managing her time and going into unauthorized overtime." *Id.* However, neither Ms. Roland nor anyone else had provided Ms. Brzycki training to help her improve her ability to manage her time before setting the six-patient schedule. Brzycki Decl. ¶ 26.

Second, Ms. Roland noted that

> The inpatient ARNP's . . . have been kind enough to help us out when there [sic] schedule permits. . . . They had previously agreed to see 6 patients on Friday July 7th and Tuesday July 11th (both of these days were booked with 6 patients) once we heard of Mattie's return we decided it only fair to have Mattie see these patients as the inpatient ARNPs were seeing patients in stroke clinic in addition to their other full time work.

Fix Decl. Ex. P. Ms. Roland thus emphasized "fairness" to other employees in developing Ms. Brzycki's part-time schedule rather than Ms. Brzycki's need for accommodation for her disability. Notably, the inpatient ARNPs who had covered Ms. Brzycki's Stroke Clinic shifts during Ms. Brzycki's April through July leave also covered Ms. Brzycki's Stroke Clinic patients when Ms. Brzycki returned to medical leave on July 12. Brzycki Decl. ¶ 27; see also Fix Decl. Ex. U (Tirschwell Dep.) at 68:3-69:23.

Third, Ms. Roland attached to her email a spreadsheet showing the number of patients that were scheduled for Ms. Brzycki compared to the number of patients she actually saw on each clinic day.[4] Fix Decl. Ex. P at UWMB005340. Her spreadsheet showed that the average number of patients seen per day was just over three. *Id.*; *see also id.* at UWMB005327. Ms. Roland stated that she based her proposed schedule on the average number of patients who

---

[4] The Stroke Clinic typically had a high no-show rate for two- to four-week ARNP follow-up visits in 2016. Fix Decl. Ex. P at UWMB005327.

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 10
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

attended their clinic appointments, but there is no evidence that Ms. Roland considered the effect on Ms. Brzycki if a full slate of six patients attended their appointments, as actually occurred on July 11.

Fourth, Ms. Roland noted, "If Mattie attended rounds on Monday/Wednesdays and case conference on Fridays as detailed in her schedule we felt this would give her prep time to know the patients and any pertinent issues that arose." Fix Decl. Ex. P at UWMB005327. Attending rounds and case conference, however, would not have helped Ms. Brzycki during the first few weeks after she returned return to work. Ms. Brzycki saw patients two to four weeks after they were discharged from the hospital. Brzycki Decl. ¶ 4. Therefore, the rounds and case conferences for the patients scheduled for clinic on July 11 would have taken place in the weeks <u>before</u> Ms. Brzycki returned to work.

Finally, Ms. Roland wrote, "It's also worth mentioning that at any point Mattie could have and should have communicated with me any concerns and problem solve around her schedule." Fix Decl. Ex. P at UWMB005327. Ms. Brzycki, however, <u>did</u> communicate her concerns about the schedule to Ms. Roland in her June 30 email, but Ms. Roland flatly refused to discuss those concerns. *See* Fix Decl. Exs. N & O.

Aside from a brief period in November 2017, Ms. Brzycki never returned to full time employment at Harborview. Brzycki Decl. ¶ 28. By late November 2017, Ms. Brzycki felt she had no other choice but to resign in order to protect her mental health. *Id.*

**B.   Procedural Background**

Ms. Brzycki filed her Complaint in this Court on October 29, 2018 (Dkt. # 1), and her Amended Complaint on October 24, 2019 (Dkt. # 24). She alleges claims of discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 11
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

U.S.C. § 2000e, et seq. ("Title VII") and the Washington Law Against Discrimination, chapter 49.60 RCW ("WLAD"); retaliation for making complaints of discrimination in violation of Title VII and the WLAD; and failure to accommodate her disability in violation of the WLAD. Amended Complaint (Dkt. # 24).

### III.   ARGUMENT AND AUTHORITY

**A.   Summary Judgment Standard**

"Summary judgment is appropriate if there is no genuine dispute of material fact viewing the evidence in the light most favorable to the nonmoving party." *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 773 (9th Cir. 2018) (internal quotation marks and citation omitted); Fed. R. Civ. P. 56. The movant bears the initial burden to demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of a material fact is "one that could reasonably be resolved in favor of either party." *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

**B.   The Court should grant Ms. Brzycki's motion for summary judgment because Defendants failed in their duty to reasonably accommodate her disability in June and July 2017.**

The Washington Law Against Discrimination ("WLAD") requires an employer to reasonably accommodate an employee with a disability unless the accommodation would pose an undue hardship. RCW 49.60.180(2); *Pulcino v. Fed. Express Corp.,* 141 Wn.2d 629, 639, 9 P.3d 787 (2000), *overruled in part on other grounds by McClarty v. Totem Elec.,* 157 Wn.2d 214, 228, 137 P.3d 844 (2006). To prevail on a failure to accommodate claim, the plaintiff must show that (1) she had a disability as defined by the WLAD; (2) she was qualified to perform the

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 12
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

essential functions of her job; (3) she gave the employer notice of her disability and limitations; and (4) upon notice, the employer failed to adopt measures available to it in order to accommodate the disability. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 532 (2003).

A reasonable accommodation must allow the employee to work in the environment and perform the essential functions of her job without substantially limiting symptoms." *Frisino v. Seattle School Dist. No. 1*, 160 Wn. App. 765, 777-78, 249 P.3d 1044 (2011) (*citing Griffith v. Boise Cascade, Inc.,* 111 Wn. App. 436, 442, 45 P.3d 589 (2002)). "To accommodate, the employer must affirmatively take steps to help the employee with a disability to continue working at the existing position or attempt to find a position compatible with the limitations." *Id.* (citing *Griffith,* 111 Wn. App. at 442, 45 P.3d 589). Because the evidence in the record shows that there is no genuine dispute of fact regarding the four elements of Ms. Brzycki's claim for failure to accommodate in June and July 2017, the Court should grant Ms. Brzycki's motion for partial summary judgment on this claim.

**First**, there is no genuine dispute that as of June and July 2017, Ms. Brzycki was disabled within the meaning of the WLAD. To establish that she had a disability for purposes of qualifying for reasonable accommodation, Ms. Brzycki's burden is only to show that she had "an impairment that substantially limit[ed] . . . her ability to perform the job." *Johnson v. Chevron U.S.A., Inc.,* 159 Wn. App. 18, 28, 244 P.3d 438 (2010); RCW 49.60.040(7). Here, by June 2017, Ms. Schuringa, Ms. Sternoff, and Mr. Stell had diagnosed Ms. Brzycki with anxiety that affected her ability to work. *See* Fix Decl. Ex. A (Schuringa Dep.) at 20:25-21:3; Fix Decl. Ex. E (Sternoff Dep.) at 21:6-21:17; Fix Decl. Ex. R (Stell Dep.) at 92:5-11; 92:20-93:14. See also Fix Decl. Exs. B, C, F, H, & S (leave documentation submitted by Ms. Brzycki's health care providers).

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 13
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

**Second**, there is no genuine dispute that Ms. Brzycki was qualified to perform the essential functions of her position. Although Harborview had disciplined Ms. Brzycki in April 2017 for purported violations of Harborview policy and placed her on a performance plan, Harborview made no determination during that process that she was not qualified to do her job. *See generally* Fix Decl. Ex. V.

**Third**, there is no genuine dispute that Ms. Brzycki and her providers gave Harborview notice of her disability and limitations. The Health Care Provider Certification form that Ms. Sternoff submitted to Harborview on June 27, 2017 made clear that Ms. Brzycki suffered from "anxiety, panic attacks, and elevated blood pressure associated with work stress," that her anxiety had "affected her work," and that she needed the accommodation of a part-time schedule of no more than twenty hours per week for two months. Fix Decl. Ex. H.

**Fourth**, the evidence in this case makes clear that Defendants failed, as a matter of law, to meet their obligation to engage in good faith in the interactive process to identify and adopt reasonable measures to accommodate Ms. Brzycki's disability in June and July 2017.

The reasonable accommodation process "envisions an exchange between employer and employee, which each party seeks and shares information to achieve the best match between the employee's capabilities and available positions." *Frisino*, 160 Wn. App. at 779-80, 249 P.3d 1044 (citing *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408-09, 899 P.2d 1265 (1995)). The employer has a duty to determine the nature and extent of the disability after the employee has initiated the process by notice. *Id.* at 780. This interactive process requires "a good faith exchange of information" between the parties. *Id.* The interactive process requires "communication and good-faith exploration of possible accommodations" between employer and employee, and neither side can delay or obstruct the process. *Huge v. Boeing Co.*, No. C14-

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 14
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798 ~ (206) 682-6711

857 RSM, 2015 WL 6626568, at *9 (W.D. Wash. Oct. 30, 2015) (citing *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001)).[5] "Employers should 'meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome.'" *Reed v. Kindercare Learning Centers, LLC*, No. C15-5634BHS, 2016 WL 7231454, at *6 (W.D.Wash. Dec. 14, 2016) (quoting *Barnett v. U.S. Airways, Inc.*, 228 F.3d 1105, 1115 (9th Cir. 2000), *judgment vacated on other grounds by U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)).

Although an employer is entitled to select the mode of accommodation offered where multiple potential modes of accommodations are possible, the accommodation selected must be <u>adequate</u> and <u>effective</u>. *Frisino*, 160 Wn. App. at 779-80, 249 P.3d 1044. An employer may choose to make only one attempt at accommodation, but it risks statutory liability if that attempt is not effective and it cannot show that additional efforts are an undue burden. *Frisino*, 160 Wn. App. at 782, 249 P.3d 1044. Here, because Defendants failed outright in their duty to engage in the interactive process to identify an accommodation that would be effective for Ms. Brzycki, summary judgment for Ms. Brzycki on her claim is warranted.

There is no dispute that Ms. Roland developed the part-time schedule without consulting Ms. Brzycki to better understand her need for accommodation. After Ms. Roland sent Ms. Brzycki the schedule, Ms. Brzycki met <u>her</u> obligation to communicate to Ms. Roland her concerns that the accommodation would not be effective. She pointed out to Ms. Roland

---

[5] The WLAD and the federal Americans with Disabilities Act have the same purpose; thus, Washington courts look to ADA cases for guidance in interpreting the requirements of the WLAD. *MacSuga v. Cnty. of Spokane,* 97 Wn.App. 435, 442, 983 P.2d 1167 (1999) (citing *Fahn v. Cowlitz Cnty.,* 93 Wn.2d 368, 376, 610 P.2d 857 (1980)).

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 15
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

that she ordinarily saw five patients on a full-time schedule on Tuesdays, that she feared she could not see six patients in a part-time schedule, and that the proposed schedule did not allow time for her to prepare for the Tuesday patients. Fix Decl. Ex. N. She suggested, as an alternative, that she see three to four patients on Tuesdays rather than six. *Id.* Rather than engage with Ms. Brzycki to determine whether adjustments could be made to the proposed schedule that would make the accommodation effective for her, Ms. Roland ignored Ms. Brzycki's concerns and flatly rejected her alternative proposal. Ms. Roland removed Ms. Francis, the Leave Specialist responsible for managing the accommodation process for Ms. Brzycki, from the email thread about the part-time schedule, and told Ms. Brzycki that the part-time schedule she had developed was "not up for negotiation." Fix Decl. Ex. O.

Ms. Roland's reasons for refusing to adjust the schedule are contrary to the "flexible, interactive process" required by the WLAD. First, Ms. Roland testified that she and Ms. Balch interpreted Ms. Brzycki's request for a lighter patient load on Tuesdays as "about work performance" rather than about her need for accommodation. Fix Decl. Ex. L (O'Donohue Dep.) at 173:6-175:2. Thus, Ms. Roland's own testimony shows that she was not thinking of the need to propose an effective accommodation for Ms. Brzycki's disability when she rejected Ms. Brzycki's concerns.

Ms. Roland's purported justifications for the proposed schedule also demonstrate that her reasons for developing the schedule and refusing to adjust it in response to Ms. Brzycki's well-founded concerns were based on improper considerations, incorrect assumptions, and falsehoods rather than on determining an effective accommodation for Ms. Brzycki. Ms. Roland assumed a nearly 50% no-show rate for Tuesday clinics; moved the six patients who had already been scheduled to see a full-time ARNP to Ms. Brzycki's schedule; and assumed

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 16
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

Ms. Brzycki would always have seen the patients in rounds and case conferences prior to their follow-up visits and therefore have no need for pre-clinic patient preparations. Fix Decl. Ex. P at UWMB005327. Although Ms. Roland also referred multiple times to "ongoing" issues with Ms. Brzycki "not appropriately managing her time," at no point in her emails to Ms. Brzycki or Ms. Petritz did Ms. Roland mention anything about providing training or assistance to Ms. Brzycki on ways to improve her efficiency and time management. *See id*.; *see also* Fix Decl. Ex. N.

There is also no dispute that an accommodation that provided a lighter patient load for Ms. Brzycki was possible. According to Ms. Roland's email to Ms. Petritz, the six July 11 patients had already been scheduled to see the inpatient ARNPs before Ms. Brzycki returned to work. Fix Decl. Ex. P at UWMB005327. The inpatient ARNPs had covered Ms. Brzycki's clinic shifts during Ms. Brzycki's April through July medical leave, and they covered those shifts after Ms. Brzycki returned to medical leave on July 12. Although Defendants claim it was a "struggle" to cover the follow-up visits while Ms. Brzycki was on medical leave, the patients were still being seen. Fix Decl. Ex. U (Tirschwell Dep.) at 69:5-23. The only reasonable inference to draw from this evidence is that Defendants could have reduced Ms. Brzycki's patient load on Tuesdays to three or four, consistent with her request, and continued to have the inpatient ARNPs see the remainder of the patients.

Finally, Defendants cannot rely on an undue hardship defense to avoid liability for their failure to accommodate Ms. Brzycki in June and July 2017. Defendants expressly withdrew their previously-asserted undue hardship affirmative defense in their answers to Plaintiff's Second Interrogatories. Fix Decl. Ex. T at Interrogatory No. 15.

In light of the foregoing, there can be no genuine dispute of fact that Defendants failed

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 17
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798 ~ (206) 682-6711

to reasonably accommodate Ms. Brzycki's disability in June and July 2017. The Court should, therefore, grant Ms. Brzycki's motion for partial summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Ms. Brzycki's motion for partial summary judgment and hold, as a matter of law, that Defendants failed to accommodate Ms. Brzycki's disability in June and July 2017.

DATED this 27th day of November, 2019.

                  FRANK FREED SUBIT & THOMAS LLP

                  By: */s/* Christie J. Fix
                  Christie J. Fix, WSBA # 40801
                  705 Second Avenue, Suite 1200
                  Seattle, WA 98104
                  Phone: (206) 682 6711
                  Email:  cfix@frankfreed.com
                  Attorneys for Plaintiff

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 18
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel/parties of record. I hereby certify that no other parties are to receive notice.

DATED at Seattle, Washington on this 27th day of November, 2019.

                                                   */s/Sarah Gunderson*_____
                                                   Sarah Gunderson

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 19
NO. 2:18-cv-01582-MJP

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  ~  (206) 682-6711