# EXHIBIT R

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

_____

MARTHILDE BRZYCKI,              )
                                )
        Plaintiff(s),           )
                                )
    vs.                         )  2:18-cv-01582-MJP
                                )
HARBORVIEW MEDICAL CENTER, and  )
UNIVERSITY OF WASHINGTON,       )
                                )
        Defendant(s).           )
_____

DEPOSITION UPON ORAL EXAMINATION OF

REID STELL

_____

Taken at 1111 Third Avenue, Suite 3000
Seattle, Washington

DATE TAKEN:  NOVEMBER 7, 2019
REPORTED BY:  PATSY D. JACOY, CCR 2348

1    A. Yes, and they did not require a diagnosis.

2    Q. Okay. And in none of those sessions did you

3    provide a diagnosis?

4    A. Yes.

5    Q. Okay. Now, your first session with

6    Ms. Brzycki that was not in the KePRO EAP process was

7    on January 11, 2017, correct?

8    A. Correct.

9    Q. And that is the first time that you actually

10   provided an ICD-10 diagnosis, correct?

11   A. Correct.

12   Q. Now, did you do that because if you didn't you

13   wouldn't be paid by Regence?

14   A. Yes.

15   Q. Okay. So, in other words, to ensure that you

16   were paid by Regence and that your patient, your

17   client, wasn't stuck with the bill, you had to put in

18   something as an ICD-10 diagnosis?

19   A. Yes.

20   Q. Okay. And here you identified code as F4322.

21   Is that adjustment disorder with anxiety under the

22   ICD-10?

23   A. Yes.

24   Q. Okay. How did you reach that conclusion? How

25   did you -- I'll ask it a better way. How did you come

Page 93

1    to diagnose Ms. Brzycki with adjustment disorder with
2    anxiety?
3         A.  At this point in my career I don't -- I
4    recognize symptoms and fit them to a diagnosis based on
5    experience.
6         Q.  Okay.  What is adjustment disorder with
7    anxiety?  Obviously it's a diagnosis under the ICD-10,
8    but what are the symptoms of -- what are the symptoms
9    that you would see that would lead you to make that
10   diagnosis?
11        A.  The symptoms include anxiety, sleeplessness,
12   irritability, as a result of external conditions.
13        Q.  Did Ms. Brzycki have all of those symptoms?
14        A.  Yes.
15        Q.  Okay.  Now, at this point you understood that
16   Ms. Brzycki was seeing a primary care provider?
17        A.  Yes.
18        Q.  Okay.  In the Procedure Notes section there's
19   a reference to a PCP, right?
20        A.  Yes.
21        Q.  Okay.  In fact, it says:  Her PCP -- primary
22   care provider -- advised her to take another month off.
23   Is that right?
24        A.  Yes.
25        Q.  Okay.  And did you know who her primary care

1   humiliation by managers at Harborview you don't have
2   personal knowledge?
3       A.  Absolutely right.
4       Q.  Okay.  And then below in Other Restrictions
5   and Effects of Medication, I'll try this, it looks like
6   you wrote:  Client would be able to work at another UW
7   facility?
8       A.  Yes.
9       Q.  Okay.  And then there's a question below that
10  it says:  Anticipated duration of these restrictions.
11  You wrote:  Recommend immediate transfer?
12      A.  Yes.
13      Q.  And then next to the box it says:  Are these
14  restrictions medically necessary?  You checked yes.
15      A.  Yes.
16      Q.  All right.  So let me see if I get this
17  straight.  As of July 12, 2017, when you completed this
18  form, you were representing to the university that
19  Ms. Brzycki could not at that time perform the
20  functions of her job?
21      A.  Yes.
22      Q.  Okay.
23      A.  In the environment where she currently worked.
24      Q.  Okay.  But you were also indicating that --
25  you were recommending a medical leave of absence

1    starting July 15, 2017 to an unknown end date?
2        A. Yes.
3        Q. Okay. And you were also recommending an
4    immediate transfer to a different job?
5        A. Yes. Those seem like two different
6    recommendations, don't they?
7        Q. Right. So what -- what -- were you
8    recommending both that she be put on medical leave for
9    this job and that the UW find her a different job?
10       A. No. I was recommending one or the other.
11       Q. Okay. And you were letting the university
12   make that decision?
13       A. I had no control over their decision.
14       Q. Okay. All right. Why were you recommending
15   on July 12, 2017 that she go on a medical leave of
16   absence?
17       A. To get her out of that environment.
18       Q. Okay. Why were you recommending as an
19   alternative that she be transferred to a different job
20   or a different UW facility?
21       A. To get her out of that environment.
22       Q. Okay. Whose idea was it that as of July 15,
23   2017, Ms. Brzycki go on a medical leave of absence; was
24   it hers or yours?
25       A. It was -- I guess you could say it was a

1          C E R T I F I C A T E

2

3      STATE OF WASHINGTON  )
                            )
4      COUNTY OF KING       )

5

6           I, Patricia D. Jacoy, a Certified

7      Shorthand Reporter in and for the State of Washington,

8      do hereby certify that the foregoing transcript of the

9      deposition of REID STELL taken on November 7, 2019 is

10     true and accurate to the best of my knowledge, skill

11     and ability.

12

13

14     _____

15         Patricia D. Jacoy, CSR 2348