The Honorable Marsha J. Pechman

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

Dr. MARTHILDE BRZYCKI,

                   Plaintiff,

 vs.

UNIVERSITY OF WASHINGTON,

                 Defendants.

CASE NO.:  2:18-cv-01582-MJP

**STATEMENT OF FACTS**

## I.    JURISDICTION

Jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331 and § 1332.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## II.    CLAIMS AND DEFENSES

At trial, the Plaintiff will pursue the following claims against Defendants Harborview Medical Center ("Harborview") and the University of Washington ("the University"):

1.    Discrimination on the basis of race and national origin in violation of the Washington Law Against Discrimination ("WLAD") and Title VII of the Civil Rights Act of 1964 ("Title VII")

2.    Retaliation for engaging in protected activity in violation of the WLAD and Title

VII; and

3.      Failure to accommodate Plaintiff's disability in violation of the WLAD.


## III.   FACTS

1.      Defendant Harborview Medical Center (HMC) is a hospital in Seattle owned by King County and managed under contract by Defendant the University of Washington (UWMC).

2.      The Stroke Clinic at Harborview cares for patients with cerebrovascular disease who have suffered a stroke or transient ischemic attack or who are at risk for stroke or transient ischemic attack.

3.      Dr. Marthilde Brzycki is Black and a native of Haiti.

4.      Brzycki moved to the U.S. when she was eleven years old and continues to speak with a Haitian accent.

5.      Brzycki started her employment at Harborview Medical Center as a Bachelor's degree Registered Nurse in in the Post-Anesthesia Care Unit (PACU) in October 2011. (See audit paperwork filled out by Tricia Roland stroke program manager, on 12/06/16 - Not by hiring manager Vicki Johnson or PACU manager Barb Dewitt/Patricia Colescott. This file documented Brzycki's hired date was on 9/14/2011 and her PACU RN/nursing role orientation list included). UWMB00 7631. See UWMC7691 HMC Kathy Ivers hiring letter dated September 15, 2011.

6.      November 10, 2014: Brzycki, after receiving her master's degree and her ARNP license, Brzycki began working as a full-time hourly Registered Nurse 2 at the University of Washington Comprehensive Stroke Center at Harborview – While Brzycki waited for the completion of the ARNP credentialing process. See UWMB7639.

7.      January 2015: Brzycki became a full-time Stroke Health Care Specialist ("HCS")

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

after Harborview Medical Center approved her ARNP privileges. (UWMB007633 and see also UWMB007632). Updated by nurse recruiter Kathy Ivers in 2011. See UWMB007634 – 48 which include responses from Kelly Paananen (director of the HCS at Harborview), and Vicki Johnson.

8.     Stroke Clinic operations are overseen by the Stroke Program Director and the Stroke Program Manager. The Stroke Program Manager oversees a small team that includes the Stroke Program Coordinator, the Stroke Resource Nurses, and the Stroke Health Care Specialist.

9.     As Stroke Health Care Specialist (HSC), Brzycki reported to the Stroke Center Program Manager. The Stroke Program Manager reported to Assistant Administrator Kathleen (Kathy) Hare. Kelly Paananen is director for all the HCS hired at Harborview Medical Center.

10.     The first Stroke Center Program Manager for Brzycki was the Healthcare Specialist Nurse Practitioner Vicki Johnson – from November 2014 to the end of December 2015.

11.     Brzycki's duties as Health Care Specialist included seeing stroke patients discharged from the hospital after a for medical management, to review and order lab, review and order diagnostics, to provide counseling, for care coordination, stroke education, and monitoring for secondary stroke prevention. Her duties also included helping all the stroke neurologists (Drs. David Tirshwell, Kyra Becker, Claire Creutzfeldt, Jonathan Weinstein, Rizwan Kalani, and the neurology fellows such as Dr. Freeburg, Joseph Nicholas), with whatever they needed. Brzycki was also collaborating with the other stroke clinic neurologists (Arielle Davis, Dr. Sandeep Khot, Dr. Will Longstreth, Dr. Hu, and Dr. Sarah Schepp) – When they had stroke patients scheduled with Brzycki, when their patients called in with questions, or when Brzycki presented their patients in stroke conference for review and recommendations.

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

Brzycki was helping the neurologists with their work (Exhibit 17, Kathy Hare testimony page 119, line 6-25).

12.     Brzycki was also serving as a resource for inpatient staff and coordinating daily essential patient needs in collaboration with the program coordinator (First Debra Shelton then Alexis Drum), the 2 assigned Stroke Center Resource Nurses (First Dawn Drury and Tammy Sueyen,  followed by Tammie English and Ryan Huffman). Brzycki was  serving as a resource for the 5 stroke clinic nurses who were helping the stroke center resource nurses with the nursing triage calls and "EPIC system in-baskets". (Exhibit 111, MB 002360, MB002361).

13.     Brzycki and her predecessors were initially assigned one day of clinic on Tuesdays, to see 3-4 patients, two to three weeks after their hospital discharge. All other stroke patients discharged from the hospital were placed on a "wait list".  These post-stroke patients were later seen by a neurologist 2-3 months after the patients were discharged from the hospital. Per policy, all UWMC including HMC stroke center outpatient clinic physicians or practitioners are allowed '3 days' to document their clinic visit notes (UWMB003090).

14.     Patients with stroke or other neurological disorders seen in the stroke clinic by the HCS/ARNP and the neurologist/physicians were scheduled by the UWMC/HMC call center, the hospital at discharge, and by the stroke clinic PCC/scheduler, Tracy Ezell. (See UWMB003009).

15.     In August 2015, Brzycki complained to Vicki Johnson and then Johnson's manager, Assistant Administrator for Patient Care Services Kathleen (Kathy) Hare, about Johnson and perceived challenges in Stroke Center.  Kathy Hare assigned Human Resources Consultant Nola Balch to investigate Brzycki's complaint. Although Balch's investigation identified issues with Johnson's management and communications skills, Balch concluded that Johnson had not created a hostile work environment.

16.  <u>In August 2015</u>, Brzycki also complained to the University of Washington's UCIRO about Vicki Johnson discriminating against staff of color who worked in the stroke center and stroke clinic (Brzycki, Tracy Ezell stroke clinic PCC, Margaret Kamande MSN and stroke center QI specialist, and Gloria Flores stroke center coordinator). Brzycki then discontinue her UCIRO complaint and left it to Harborview HR to follow up on her complaints.

17.  On <u>August 25, 2015</u>: Kelly Paananen wrote to Kathy Hare and spoke to Ms. Brzycki regarding her duties in the stroke Center. Kelly Paananen told Ms. Brzycki "not to perform clerical duties or RN duties (such as answering the phones, in- baskets, or nursing triage)". She further stated that "these duties are not for physicians or Healthcare Specialists". Paananen stated to Kathy Hare in an email, that "I would like her to stop doing those tasks that are not HCS tasks; and if there is a shortage of staff, we need to look at getting the correct staff in". (See Paananen' s deposition page 33, line 6 – 9.  Page 64 line 20 – 25 , page 65: line 1 – 16 ; Also see  UWMB002950, UWMB002951, and Exhibit 116).

18.  In or around <u>November 2015</u>, Kathy Hare engaged Abeba "Abby" Tesfamarian, Director of Procedure Operations, to assess the Stroke Center.  Tesfamarian interviewed stroke staff and providers and issued written findings.

19.  <u>In her deposition</u> in November 2019, "Abby" testified that she was not aware of, or told by Kathy Hare or Nola Balch about any discrimination complaints that Brzycki filed with the UCIRO in August 2015 regarding Vicki Johnson and Dawn Drury. Abby Tesfamarian testified that "a pending investigation could've made a difference in her assessment of the issues in the stroke center'. Abby further stated that "we're supposed to create an environment where someone feels free to complain without any retaliation" (page 48, 49, and page 50 page line 15 – 25).

20.     In November 2015. Documented in Abby's testimony was that Vicki Johnson worked remotely, and Dawn Drury was working remotely daily for almost 2 hours before arriving to work. Dawn Drury "was clocked in daily and working on the train on her way to work". She did not receive any disciplinary action against her. The neurologist and other physicians worked remotely in 2016. EPIC notes/documentations system were being done remotely with instructions provided by UWMC/HMC.   EPIC Notes could be accessed via phone/computer remotely per UWMC/HMC instructions to its staff in 2016. Updates were sent to help pre-chart on May 11, 2017 from euritems@UW.edu  that devices could be registered via "Haiku and Canto". (See also UWMB003044).

21.      November 2 - 9th, 2015:  Per document UWMB 003071,  Vicki Johnson (stroke program manager) stated that Brzycki's notes were not detailed or long enough for UWMC compliance billing and that the ARNP should see more patients. (line 7). Abby also wrote "Vicki feels that Brzycki's notes/documentation was not enough" , because "a detailed documentation is required for billing". (UWMB 003072, line 5. UWMB 003071 line 7).

22.     In November  2015, during Abby's assessment, Brzycki had already requested a third day of clinic to see patients "from the long wait list", and was "already" working in the stroke clinic 3 days a week. Patients were scheduled by the hospital on "Tuesday's 4 spots, Thursday 4 spots, and Friday 4-5 spots. The clinic had a lot of no shows".  See UWMB 003051 last paragraph of email to Kathy Hare in October 2015, and UWMB 003071 (line 3 in the bottom of the letter 'Meeting with Mattie November 9, 2015').

23.     Vicki Johnson did state on November 2, 2015 that she did not like Brzycki having stroke clinic 3 days a week (UWMB 003071, line 11).

24.     All of the stroke center Healthcare Specialist from 2015 with Brzycki to current

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

with Kelsey Henson, are required to see patients scheduled by the hospital, the call center, and Tracy Ezell PCC, on Tuesdays, Thursdays, and Fridays in stroke clinic.

25.    <u>In December 2015</u>: Vicki Johnson went on leave and never returned to work.

26.    Between <u>January 2016 and August 12, 2016</u>, Brzycki asked Kathy Hare for a performance review, feedback, a job description or clarification of her role and duties. Brzycki sent these requests via emails and attached duties that Brzycki had written for Kathy Hare to review, and workflow to show how she was spending her time.

27.    <u>January 2016</u>: After Vicki Johnson left, Miryah Hibbard served as an Interim Stroke Program Manager, while Harborview sought a full-time replacement.

28.    Kathy Hare stated in her testimony that "she shared the 2015 assessment findings by Abby Tesfamarian on Vicki Johnson with Myriah Hibbard". Page 107, line 16 - 20.

29.    On <u>January 5th, 2016</u>, Miryah Hibbard and Kathy Hare planned to discuss Brzycki's job role.

30.    <u>February-March 2016</u>: Myriah Hibbard along with the stroke clinic managers Crystal Kelly, Aaron Guzik, and Cydney Barnes assigned the 5 stroke clinic RNs to help the two stroke center resource nurses (Tammie English and Ryan Huffman) with the "Epic In-baskets", and nursing triages.

31.    <u>May 17, 2016, and in July 2016</u>: Ms. Brzycki asked the directors of the stroke center (Drs. Tirshwell and Becker) and the program manager Myriah Hibbard, for role clarification. Brzycki's email was well received and professional discussions showed that Brzycki was able to explain challenges and understood post-stroke patient's needs but wanted to know if the directors and program manager approved of her practice, since she did not have a job description or performance review as of yet. (Exhibit 110, UWMB 000707, UWMB 000708,

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

UWMB 00709. Exhibit 118).

32.     August 12, 2016: Brzycki again sent Kathy hare an email, because she wanted a performance review. The email had duties that Brzycki wrote and was currently performing, some of which were stroke resource nurse duties. Brzycki asked for a performance review,  and a job description to help her clarify her role and duties before a new manager arrives. Attached to those e-mails were detailed written workflow.

33.     On May 19, 2016 at 11:33 am: In response to Miryah  Hibbard's email stating that "she was, along with Dr Tirshwell and Dr. Becker were starting to work on a job description"; Brzycki wrote back to Myriah Hibbard and Drs Tirschwell and Becker the same day at 1:59pm. In that email, Brzycki described in detail, all the types of education she was providing, and those she was performing that was usually assigned to the 2 stroke resource nurses and the unit nurses.

34.     Myriah  Hibbard "started taking significant chunks of leave time" (Balch testimony page 48, line 6-12.

35.     Late May 2016: Myriah Hibbard separated from Harborview. Miryah was taken her last day of work, from the stroke center office in a wheelchair to the Emergency Department, after Tammie English and Brzycki contacted Kathy Hare regarding Hibbard's behavior in the office "being incoherent, spacing out, mumbling, and stumbling around" during a meeting with staff members. Hibbard never returned to the stroke center.

36.     After Myriah Hibbard separated from Harborview, Kathy Hare supervised Stroke Center employees for a several months.

37.     Ms. Brzycki  assumed as many duties as possible due to the short-staffing issues, including those of the Stroke Resource Nurse.

38.     Brzycki was working nights and weekends at home, unpaid – totaling hundreds of

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

hours due to short-staffing in the stroke center, covering for neurologist on vacation, performing follow ups, and helping the 5- 6 neurologist in the stroke center with their patients after hospital discharge before or after their stroke clinic visits.

39.    <u>From May 2016 to Nov 30 2016</u>: Brzycki attended stroke conferences on Fridays and presented several patients, for questions, review of diagnostics, medication regimen, and follow up needs. Dates of Brzycki's discussion on patients with emails sent to 'stroke conference' email  (Emails with the following date: 5/27/2016 questions on diagnostics needed, 6/3/2016 – questions regarding concerns in MRI/CT scan, and what type of anticoagulation should be chosen, 7/8/2016,  6/17/16 – question regarding the best anticoagulation after the patient's diagnostic results, 9/11 – questions regarding MRI and new microbleeds, 9/16/2016, 9/23/2016, Brzycki discussed 2 of Dr. Tirschwell's complex patients she saw in clinic during stroke conference in October and November 2016, 11/4/2016, and on 4/21/20 (when Brzycki returned from medical leave), she also presented patients to the conference (See (Exhibit 125), and one example in UWMB 004209.

40.    Between <u>March and May 2016</u> Tricia Roland and her husband, were in contact via mail and cell with Marthilde Brzycki; This is about 6 months before Ms. Roland started her job at Harborview stroke center. (Roland deposition page 186-188.)

41.    <u>June 2016</u>: Brzycki was working in clinic Tuesdays, Thursdays, and Fridays. That pattern continued until Friday December 1, 2016. Kathy Hare and Nola Balch were aware. See UWMB 003071.

42.    On <u>August 12, 2016</u>:  Exhibit 1, MB-000829, MB-000830, MB -000831. Brzycki sent Kathy Hare an email, including the duties that Brzycki wrote. The second email sent with attachment included a detailed print out of a "workflow" demonstrating how Brzycki was

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

spending her hours for Kathy to review due to short-staffing issues. Brzycki wanted a performance review.

43.     In <u>August 2016</u>, Harborview hired Tricia Roland (now O'Donohue) as Stroke Program Manager. Ms. Roland began her employment at Harborview <u>on August 23, 2016</u>.

44.     Kathy Hare Stated that she shared the 2015 assessment findings by Abby Tesfamarian on Vicki Johnson with Tricia Roland. (Hare Testimony Page 107, line 14-15).

45.     In <u>September 2016</u>: Tricia Roland attended a party with Marthilde Brzycki's Haitian friends and family. Roland inquired about but was not invited to the large Haitian gathering that was discussed during the party she attended. The party was planned for the end of the month in September 2016. (deposition line 4 on page 190 – l94, exhibit 102).

46.     Mid-<u>September 2016</u>: Tricia Roland started investigating Ms. Brzycki time, work performance. (See Roland testimony on page 58, line 5 – 20).

47.     In <u>September 2016</u>: Alexis Drum, the stroke center program coordinator, contacted and met with Kathy Hare to discuss issues in the stroke center office. Kathy Hare, in her testimony stated that "she could not confirm or deny whether Alexis Drum raised concerns regarding how Tricia Roland was treating Marthilde Brzycki. (Kathy Hare testimony page 91, line 22-25. Page 92, line 1- 25).

48.     Alexis Drum's employment was terminated. Kathy Hare stated that she was part in the decision to terminate Drum's employment. (Page 93, line 4-12). Nola Balch also participated.

49.     <u>October 2016</u>, Brzycki emailed the directors of the center regarding scheduling to see patients on Thursday for overbook - after Veterans day, to prevent scheduling the patients too far out. Dr. Tirschwell thought "it was a great idea", and Roland was made aware.

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

50. <u>October 2016</u>: Brzycki did not have a job description to clarify her role and to set expectations. She did not have any performance review. According to Nola Balch's testimony on page 47, Tricia Roland "looked for and did not find any Job description for Brzycki". See also Nola Balch testimony page 48, line 13 – 15.

51. <u>On November 3, 2016</u> : Dr. Brzycki wrote to Kathy Hare to ask for guidance, help with her Job role, and to clarify her duties as a healthcare Specialist to avoid confusion. She asked that Kathy Hare set up a meeting between the three of them to help clarify her role and duties. Ms. Hare never help set up a meeting nor help to provide a job description. Exhibit 11, and Exhibit 14, MB 000898.

52. <u>November 3, 2016</u>: Kathy Hare and Tricia Roland were aware of an impending investigation. Kathy Hare sent a copy of Brzycki's email from 11/3/16 to Tricia Roland (O'Donohue), Kelly Paananen, and Nola Balch. See Exhibit 61. (See also testimonies of Roland page 97-98, and testimonies from Paananen, Balch, and Hare).

53. <u>November 10, 2016</u>: defendant's exhibit 15, Brzycki email chain (11/10 to 11/16/2016) with Tricia Roland, Drs Tirshwell and Becker, and Kathy Hare – This email discussed Brzycki's concerns about patient safety being ignored, lack of support for her role, and the need to clarify mandatory meetings that were scheduled during Brzycki's clinic days for seeing patients. (See also M. Brzycki testimony page 269 line 1-20). Brzycki was in clinic Tuesdays, Thursdays, Fridays. All the individuals in that email were aware of Tricia Roland's plan for an investigation. Brzycki was not offered a job description for guidance or a performance review; She was not provided with support for her role, or clear clarification on whether meetings were priority over patient clinic visits. (See Exhibit 15).

54. <u>On November 14, 2016</u>, Ms. Brzycki contacted Kelly Paananen for help and

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

guidance to help reduce confusion and work-related stress. Brzycki asked Paananen to clarify roles, duties, and voiced that "she being forced to punch out and work off the clock while in her office, forbidden to accrue overtime like other ARNP/HCS at Harborview, and Brzycki complained of unpaid overtime hours". See Exhibit 121, 89; Paananen deposition pages 58-69. Paananen previously told Ms. Brzycki not to "perform stroke resource RN or clerical duties" (See Exhibit 116 and UWMB 002950, 2951).

55.    <u>November 14, 2016</u>: Kelly Paananen at the time was aware of a planned investigation. Paananen did not respond to Ms. Brzycki's email or request, instead she contacted and forwarded Brzycki's email to Nola Balch, Tricia Roland (O'Donohue), and Kathy Hare. The three of them in the administration team continued to discuss Brzycki's email and complaints, without Ms. Brzycki's knowledge of their interactions. See Exhibit 121, 89; Paananen deposition pages 58-69).

56.    <u>November 14, 2016</u>: The above individuals (Roland, Balch, Hare, and Paananen) had two attachments with the email  sent which included the duties Brzycki was performing, the email included a "workflow document" describing how Brzycki spent her hours, and "an Outlook time stamped calendar and Brzycki schedule". (See Exhibit E with outlook schedule attached - provided a detailed account of Brzycki's work schedule and how she spends her hours). See also Exhibit C, Exhibit D, Exhibit E, and (See <u>UWMB 007873, UWMB 007874 – with email date removed by plaintiff</u> ).

57.    <u>On November 14, 2016</u> : Brzycki's email to Kelly Paananen also described that she was 'not allowed overtime', and she was forced to clock out, and remained in her office to finish her work 'off the clock' (Exhibit 121). Paananen acknowledged that she forwarded the email to Kathy Hare, Nola Balch, and Tricia Roland; and did not address the  problems Brzycki

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

mentioned about being forced to punch out and work off the clock. Hare, Balch, Roland, were aware that Brzycki was in contact with Jhovielyn Musacchio (fiscal analyst) to make sure she followed administration request for no overtime pay (See 11/12/2019 Paananen deposition on pg. 66, line 16-25).

58.     November 14, 2016: The HCS director, Paananen, further admitted that on 11/14/2016's email to her from Brzycki, Paananen did not provide guidance to Brzycki. Paananen did not tell Brzycki anything. Paananen admitted that Brzycki being forced to "punch out and working off the clock in her office was contrary to UWMC policy". Paananen admitted that HCS are allowed overtime and was aware that Brzycki was "not" allowed overtime. Brzycki continued to stay in contact with Jhovielyn Musacchio (Fiscal specialist), to make sure she followed administration request for no overtime pay. (See Paananen Deposition 11/12/2019, including  page 67 line 1-9).

59.     On November 14, 2016: The Stroke center meeting had their meeting that day. The recording of this meeting available to the court, demonstrated that Brzycki voiced her concerns to all in that meeting in a professional manner, contrary to what Ms. Tricia Roland and Nola Balch stated during their investigatory meetings starting on 12/5/20 and extended until February 2017. Ms. Roland discussed the center meeting with HR's Nola Balch, and stated that "Brzycki was unprofessional".  (See 11/14/20 stroke center recording and Balch testimony page 133 – 134).

60.     On November 16, 2016: Ms. Brzycki took 'her first sick leave day' since started her employment at UWMC stroke center at Harborview Medical Center in November 2014.

61.     In November 17, 2016, two and one half months after being hired, Tricia Roland, working with Nola Balch and Kathy Hare, planned an investigation of Brzycki's time,

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

attendance, and work performance. Roland gave Brzycki the letter informing her that an investigation had been scheduled for 12/5/16 Ms. Brzycki was never provided a job description, or a performance review up to that time.

62.     At the time, all the individuals involved (Ms. Roland, Kathy Hare, Kelly Paananen and Nola Balch had Brzycki's emails with the attachments of the duties Brzycki wrote, her schedule, her detailed times spent on clinic, care coordination, diagnostic follow ups, patient FMLA and follow up needs. See MB 000376, MB000377, Exhibit C, Exhibit D, and Exhibit E (second page of this exhibit is a time stamped copy of Brzycki's Microsoft outlook detailed monthly schedule). The monthly Outlook schedule was set up in 2015, and was available to Roland, David Tirshwell, and Kyra Becker, before the November 17th investigation was launched.

63.     On that day,  <u>November 17, 2016</u>: Brzycki  emailed her husband a couple hours later, from her UWMC email, stating that Roland 'did this because she was upset for not being invited to more Haitian gatherings and at her house". Brzycki was planning to get "proof/documents of what Tricia Roland was doing in order to defend herself." See UWMC email from Brzycki to her husband on 11/17/16.

64.     On <u>November 18, 2016</u>:  Brzycki emailed UCIRO to complain that Roland had been subjecting her to "bullying, harassment, retaliation, and discrimination."

65.     On <u>November 18, 2016</u>: Brzycki submitted a written complaint regarding "Prejudice, harassment, bullying, and threats", to the administrator and Roland's boss's Kathy Hare,  and to the director of Health Care Specialists Kelly Paananen. Included in the email was a list of duties and a workflow of how Brzycki spent her time/hours for the stroke center and the stroke clinic (these documents were writing by Ms. Brzycki months before). The document was

forwarded to Nola Balch by Kathy Hare.

66.     Interim Human Resources consultant Kim Francis was tasked with investigating the complaint.

67.     On <u>November 21, 2016</u>, Brzycki met with the University Complaint Investigation and Resolution Office (UCIRO), investigator Beth Louie about Brzycki's UCIRO complaint against Ms. Roland. Louie closed Brzycki's complaint as outside UCIRO's purview. In her deposition, Beth Louie admitted that she did not engage any questions to elicit more details regarding Ms. Brzycki's claims of discrimination and harassment.

68.     On November 21st 2016, Brzycki also consulted University of Washington UW CareLink regarding emotional distress she mentioned to HR on 11/18/16, and her needing to see a therapist or psychologist to help her cope with her work situation.

69.     On <u>Thanksgiving Day November 27, 2016</u>: Tricia Roland (O'Donohue) spent Thanksgiving dinner with Brzycki's Haitian friends (Lilia Merveus family and friends). Roland deposition page 196, line 2 to 25 and page on page 197 number 1-9). Tricia Roland also attended a party in September 2016 w with Brzycki's Haitian friends. (Tricia's Deposition page 116 line 1-14. Page 196, line 2-25, page 197 line 1-9).

70.     On <u>November 29th, 2016</u>, Brzycki started seeing UW Care link's referred counselor M. Reid Stell. Brzycki was diagnosed with "severe anxiety, panic disorder, and PTSD related to work environment".

71.     On <u>November 29th 2016</u>,   On November 29, 2016, Kim Francis interviewed Brzycki about her complaint to Hare and Paananen regarding Roland.   Brzycki's Union representative Sabrina Snow was present for the interview.

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

72.   <u>On November 29th, 2016</u>: Kim Francis's notes during her interview with Brzycki did not mention that Tricia Roland spent Thanksgiving dinner, 2 days before, with Brzycki's Haitian friends. Francis's note did state that Brzycki discussed her concerns that Tricia was treating her differently because 'Brzycki was from Haiti', Tricia's husband being Haitian, Tricia knew Mattie Brzycki before starting her job in the stroke center after Ken introduced them, and Mattie had to or was introducing Tricia to Haitian people".  (UWMB 002933).

73.   Kim Francis interviewed Tricia Roland on <u>December 13, 2016</u>: Roland and her husband knew Ms. Brzycki prior to Roland working at Harborview, attended a party in September 2016 with Brzycki's family and Haitian friends. Roland and her husband attended "Thanksgiving dinner at Mattie Brzycki's Haitian friend's house" 3 weeks prior to the interview with Kim Francis. (Roland deposition page 196, line 2 to 25 and page on page 197 line 1- 9. Tricia's Deposition page 116-line 1-14). These facts were never followed up by HR's Nola Balch.

74.   Francis interviewed Kathy Hare.

75.   On <u>December 5, 2016</u>: Brzycki's full privileges were renewed by UWMC/ Harborview with the   six (6) professional references Brzycki provided: all references were neurologist and included, Dr. Tirshwell, Dr. Kyra Becker, Dr. Jonathan Weinstein, and others.

76.   <u>Based on court testimony</u> by Nola Balch: Balch and Dr. Tirschwell discussed Brzycki asking Dr. Tirschwell to be a reference. Nola Balch and Dr. David Tirschwell discuss ways to address the reference ( See Balch and Tirschwell testimony page 157, line 10 – 25). See also Exhibit 80.

77.   <u>On December 5, 2016</u>, the first of three investigatory interviews into Brzycki's work, hours, and performance proceeded.

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

78.    On December 5, 2016:   UWMC department of compliance audit results demonstrated  that Ms. Brzycki had "100% compliance" with the University of Washington's requirement for documentation and billing. See Exhibit K, and 112.

79.    Brzycki then forwarded that email to Dr. Tirschwell, Kelly Paananen, Kathy Hare, Tricia Roland, Dr. Becker, and Nola Balch to inform them of UW audit finding Brzycki "100% compliant with documentation". The email had positive response from Dr. Tirschwell. There were no replies from Tricia Roland, Kathy Hare, Nola Balch, or Kelly Paananen. The investigation continued with allegations against Brzycki regarding notes and documentation proving to be false  (See Exhibit 112).

80.    On December  7, 2016: Ms. Brzycki was diagnosed for the first time by primary care provider Elizabeth Schuringa with "increased anxiety affecting her health". Ms. Brzycki's prior visits to her providers had normal blood pressures, no anxiety, and no sleep disorders. She was diagnosed for the first time with "insomnia and high blood pressure related work" as well. (See Exhibit 5, Exhibit 28). Deposition E.S. page 28, line 10-11, and page 32 line 1-13).

81.    On December 8, 2016:   Brzycki's health care provider, Elizabeth Schuringa ARNP, requested Brzycki be placed on medical leave for four weeks due to "increased anxiety with panic type disorder."   Harborview approved this request.   Schuringa later requested to extend Brzycki's leave until February 2017.  Harborview approved this request.

82.    On January 6, 2017, Brzycki sent an e-mail to Dr. David Tirshwell to inform him of the harassment and retaliation she suffered from the stroke program manager. Brzycki "mentioned issues with no lunch during clinic hours, unpaid overtime, and working off the clock unpaid". Contrary to Nola Balch testimony, Tirshwell forwarded the email to Nola Balch and Kathy Hare that same day and they were aware of these concerns on November 3, November 14,

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

2016 and November 18, 2016.  Tricia Roland (O'Donohue) was also provided with the email. See Exhibit 67. Also see (MB -000512, MB- 000511, MB 000 510).

83.     January 11, 2017, Francis sent Brzycki a letter advising that she did not substantiate Brzycki's allegation that Roland had harassed her.

84.     On February 2, 2017: Brzycki returned to work. That same day, Tricia Roland and Kelly Paananen had a meeting scheduled with Brzycki. Tricia Roland and Kelly Paananen were both aware that Ms. Brzycki had increased anxiety and high blood pressure related to work environment and her medical provider's request for her to avoid anxiety. They place new mandates for Brzycki that day regarding finishing her notes by end of clinic day, contrary to UWMC policies, and more (Deposition Tricia Roland page 119, line 14. Exhibit 92, and Exhibit 93).

85.     On February 13, 2017: The second of the three investigation interviews of Brzycki regarding Roland's allegations against Brzycki took place.

86.     On February 14, 2017: MB 000378. Ms. Brzycki sent an email to Kathy Hare titled 'hours verified', discussing lies that she perceived were told by Ms. Roland/Donohue. She provided dates, where to verify information, and explanation of her time in clinic one of which included a Thursday clinic day (a day in place for overbooking patients, 2 patients were seen). Ms. Brzycki voiced feeling discriminated against. Brzycki discussed the need for a job description, the need for meetings to include her. Brzycki complained about her feelings of being in distress after being called a thief (knowing Tricia and her team were aware of hundreds of hours of working off the clock were unpaid). The email included Roland, Kathy Hare, Nola Balch, Kelly Paananen, Stroke clinic manager Aaron Guzik, Dr. Claire Creutzfeldt, the union representative Sabrina Snow, and Dr. Kyra Becker. Brzycki did not have a job description at the

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

time, nor did she ever receive a performance review. (See MB000378).

87.   <u>On February, 14, 2017</u>: After receiving Brzycki's email (voicing her feelings of being in distress after being called a thief when hundreds of hours of working off the clock were unpaid, documents misrepresented, and felt discriminated against), Kathy Hare and Harborview administration team placed Brzycki on paid administrative leave.

88     <u>On February 16, 2017</u>: The third of the three investigation interviews of Brzycki regarding Roland's allegations against Brzycki continued.

89     <u>February 17, 2017</u>: Roland's administration team were aware of Brzycki's UCIRO complaint she made in November 2016, during that day's third of the three investigation meetings. Brzycki aside from telling the team during the 3rd of the three investigation meetings about the November UCIRO complaint, also told Roland's team that she continue to fight the allegations "all the up the chain, if she has to". Brzycki again sent Kathy Hare, Nola Balch, and Kelly Paananen  Exhibit K. Brzycki remained on leave.

90     Two months later while on leave: <u>On April 7, 2017</u>, Harborview sent, and Brzycki received, a Final Counseling letter, an Action Plan, a job description, and copies of various University policies via email.

91     First week of April, 2017: Brzycki contacted and spoke to Jennifer Petritz, and provided updates on her situation. Petritz suggest Brzycki contact UCIRO again.

92     <u>April 2017</u>: Brzycki contacted Dr. Will Longstreth in charge of the neurology and stroke center – regarding her concerns of "harassment, discrimination, and retaliation" in the stroke center.

93     <u>On April 12, 2017</u>, Brzycki filed EEOC Charge No. 551-2017-01080 alleging race and national origin discrimination and retaliation. She also Contacted Jenifer Petritz to enlist

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

help.

94      <u>April 13, 2017</u>: Brzycki filed unpaid wage claims with the Department of Labor and Industries for the hours she was forced to work off the clock, without lunch on clinic days, and off the clock when the center was short staffed. (L&I complaint No. 116123.)

95      <u>April 18, 2017</u>: Brzycki returned to work from administrative leave .  On that date, Balch, Roland, and Paananen met with Brzycki and her union representatives to review the Final Counseling letter and Action Plan.

96      <u>April 2017</u>: Ms. Brzycki found out she could not transfer to another UWMC/HMC department or position because of the Step C corrective action in her file. This fact was confirmed by Kelly Paananen deposition 11/12/2019 - page 120, line 5 to 22. Kathy Hare page 117 line 15-25. Nola Balch: page160 line 21-25; page 161 line 21-24, and page 162 line 3-25.

97      <u>April 21, 2017 (Friday)</u>, three days after her return from medical leave: Ms. Brzycki was in clinic for 6 hours starting at 0800. She felt she was being retaliated against. She was feeling overwhelmed after all her patients showed up except for 1. Brzycki was reminded that all her documentations and notes were to be done at the end of clinic day including that Friday clinic day 4/21/20.  University of Washington policy for completing documentation is 48-72 workday hours. See UWMC policy for outpatient clinic documentations (UWMB003090).

98      <u>On that day April 21, 2017</u>: Brzycki sent an email to Dr. Tirshwell, Kelly Paananen, Kathy Hare, Balch, and Tricia Roland while in clinic with her concerns. Brzycki was mandated to attend didactics (45 minutes). Brzycki attended stroke conference where she presented some of her complex patients to the team (conference is 1.5 hours long, ending at 4:30), that same day. She was mandated to finish all her notes by 430pm that Friday as well. No

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

lunch time was allotted/provided to Brzycki that day. (Exhibit 125).

99     On April 26, 2017, Brzycki's health care provider Rachel Sternoff, requested that Brzycki be placed back on medical leave for eight weeks beginning April 26, due to "increased anxiety with panic attacks and elevated blood pressure associated with work." (see also email to Roland (MB00523).

100     April 25, 2017: Brzycki Contacted UCIRO again, but was on medical leave when UCIRO responded via email.

101     April 27, 2017 Tricia Roland, Kathy Hare, and Nola Balch received notice of Brzycki's EEOC charge. Brzycki remained on medical leave.

102     June 26, 2017: Brzycki's medical provider, Rachel Sternoff, issued a family medical leave form indicating Brzycki could return to work on July 1, 2017, with a part-time schedule of 20 hours per week for two months. On the medical leave request form, Sternoff wrote that Brzycki was "having anxiety with panic attacks and elevated blood pressure associated with work stress."

103     On June 27, 2017: Kim Francis, now working as a Leave Specialist, received Rachel Sternoff's medical leave request form.  Francis emailed Roland to ask if Roland's department could accommodate Brzycki's request for a temporary 20 hour per week schedule. Roland investigated whether the department could accommodate the request.  Roland then drafted a part-time, 20-hour work schedule. Before sending the schedule to Ms. Brzycki, Roland sent the draft schedule to Kim Francis and the others.

104     On June 30, 2017, Roland emailed a 20 hour per week schedule to Brzycki, copying Kim Francis, Nola Balch, Kathy Hare, Kelly Paananen, and Stroke Center Director Dr. David Tirschwell.

105     Roland's schedule provided that Brzycki would be expected to work five hours per day, four days per week, with Thursdays off. The Tuesday schedule provided for 6 patients to be scheduled in the Stroke Clinic. On a full-time 8-hour schedule, Brzycki would normally see 4 to 5 patients.

106     Brzycki responded to Roland, copying the whole group from the email chain (Francis, Balch, Hare, Paananen, and Tirschwell). Brzycki stated that she could not handle seeing six patients on a part-time clinic day. She also requested "advance warning" prior to any meeting with Roland and Paananen.

107     Tricia Roland, the stroke program manager removed the UWMC/HMC disability leave specialist Kim Francis (responsible for facilitating accommodations), from the email chain response to Brzycki. Roland instead copied her team and HR representative, Nola Balch in Brzycki's email. Balch drafted a response for Roland, which Roland then sent to Brzycki without copying the disability specialist, Kim Francis.   The response provided, in part, that: "The schedule/workflow is not up for negotiation, though, as ever, if you run into challenges in meeting the work expectations you should come to me right away so that we can engage in a problem solving discussion to review workflow, priorities and strategies".

108     July 5th, 2017: Brzycki returned to work with concerns remaining that the "schedule was unfair on a part-time schedule due with her medical issues", and was retaliatory.

109     On July 5, 2017, Brzycki contacted Francis. She requested a private, quiet area to work, advance notice of meeting agendas, and uninterrupted work time. Ms. Francis was not aware of Tricia Roland's statement regarding Brzycki's schedule 'not being up for negotiation.".

110     Per Kim Francis deposition and UWMC policy, a reduced schedule can be an accommodation (page 62, line 3 – 10). But the UWMC policy does not states that "schedules are

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

not up for negotiation". In fact, <u>Francis did not agree</u> with the decision that Tricia Roland made regarding "this schedule is not up for negotiation" (page 62, line 11-18). Ms. Francis states in her deposition that statement was out of place <u>"because at any point in time, the policy states that the department or the employee could "re-engage the accommodation/disability process".</u> (page 62, line 16-25).The UWMC disability and leave specialist were responsible for whether something "is up for negotiation or not", not Ms. Roland. (Exhibit 27 UWMC disability/accommodation policy.

111    Per Kim Francis, the response statement from Brzycki's email regarding "not being able to handle more patients on a part-time schedule", <u>would warrant an investigation. Francis further states that "If she had that information she would've re-engage the process, to see if there were other modification that could be made that would work for both the employee and /or the department"</u> (page 62 line 19 – 25, and page 63, line 1-5). Further discussion between the UWMC Disability Accommodation Review team (DART), was needed when Brzycki stated she could not handle 6 patients on part-time when only 4 patients were usually schedule on a full-time schedule". (Exhibit 27 UWMC disability and accommodation policy).

112    Tricia Roland removed the HMC leave specialist Kim Francis from the email chain, therefore further accommodation for Ms. Brzycki were not discussed in advance to ensure her success in the stroke center while on part-time schedule due to her medical issues. Brzycki felt that the schedule was instead in place as a form of retaliation and to set her up for failure.

113    Brzycki was not provided an opportunity to "re-engage the accommodation process", per UWMC disability policy, when Roland decided to make the final decision herself.

114    <u>July 11, 2017</u> in the morning : "Four" workdays after Brzycki returned back from medical leave, Roland informed Brzycki that she wanted to meet with her and Paananen the next

day on July 12, 2016, "to go over plans to launch a new investigation", to review the action plan where she felt Brzycki was not meeting expectations, and the part-time work schedule". Roland invited staff from labor relations, "which would not have been required" if that meeting was regarding schedules, follow ups, and updates in the stroke center. (See Exhibit 16, Balch testimony page 152, line 13- 25, 153 pages 1-25, 157 page 1-9). See also Exhibit 79 (email between Nola and Tricia Roland discussing a new investigation).

115    On July 11, 2017, all six of the patients scheduled for Brzycki's Tuesday clinic appeared for their appointments. Brzycki worked seven hours in order to see all of her patients, two hours longer than the five hours provided on Roland's schedule. Brzycki went home at 7:30pm

116    Brzycki was scheduled to see more patients on her part-time schedule than she had seen on a regular 8-hour full time schedule. Ms. Brzycki was also mandated to finish all her notes that day or night, which she was unable to do. This mandate and practice imposed on Brzycki was contrary to University of Washington policy.

117    The next day, in the morning of July 12, 2017, Roland again advised Brzycki that she needed to attend the meeting that day with her, Balch, and Paananen.  Brzycki, however, had a pre-scheduled appointment with her counselor, Reid Stell, and was unable to attend the meeting.

118    Later that day, July 12, 2017: Brzycki returned to work with a statement from Reid Stell, which requested that Brzycki be placed on indefinite medical leave. Harborview granted Brzycki's request and she went on medical leave after completing her shift on July 14, 2017.

119    On July 12, 2017, Brzycki e-mailed Director of Medical Centers Employee

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

Relations Jennifer Petritz to complain about Roland's part-time schedule. Ms. Brzycki felt her schedule did not accommodate her, and she felt the schedule was written as a form of retaliation and punishment – setting her up for failure and to force her to quit her job in the stroke center at Harborview.

120    Petritz solicited additional information from Brzycki and Roland about the issue and responded to Brzycki's complaint via email on July 18, 2017.

121    On July 17, 2017, Brzycki contacted UCIRO again.

122    On July 19, 2017, Brzycki completed an intake interview with UCIRO investigator Alina McLauchlan regarding her complaints of discrimination and retaliation.

123    On August 12, 2017, Brzycki filed EEOC Charge No. 551-2017-01858, in which she alleged failure to accommodate, discrimination on the basis of disability, and retaliation for her UCIRO complaints and for filing the April 2017 EEOC charge.

124    August 12, 2017: Tricia Roland's testimony (10/31/19) confirmed that Roland knew about this second EEOC charge filed by Brzycki in August 12, 2016. (See Roland's testimony on pages 176 line 4 – 6 .

125    In August 21, 2017 to November 2017, when the Step C was already in place, Tricia Roland (now O'Donohue) continued to retaliate against Ms. Brzycki. Roland continued to try to 'find things' on Ms. Brzycki and continue to investigate Ms. Brzycki, 4 months later. She continued to plan for another investigation, while the current corrective action in place with adjustments to UWMC policies. Roland wrote to Nola Balch, HR specialist, to describe her continued investigation (UWMB -008214, UWMB 008215, UWMB 008216, UWMB 008217). See Roland testimony page 176 line 9-25. See also Exhibit 100.

126    On August 21, 2017: While Brzycki was on medical leave, Roland emailed HR's

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

Nola Balch stating "here are my investigatory interview questions should we ever need them". Ms. Roland boasted about 'how impressed she was with herself' in that email to HR, 4-5 months after the Step C final action plan was given to Ms. Brzycki. During that time Dr. Brzycki was on medical leave due to high blood pressure and anxiety related to work stress, and hadn't worked in the stroke center for more than a month (UWMB -008214, UWMB 008215, UWMB 008216, UWMB 008217); Balch testimony page 155 line 1-21.

127   <u>In November 2017:</u> Marthilde Brzycki was finally provided with an accommodation meeting to discuss her provider's request from <u>December 2016 to August 2017.</u> Brzycki and returned to work in the center. The stroke program manager, Tricia Roland continued her prior practice towards Dr. Brzycki (this, she was openly supported by Tirschwell). Brzycki worked a few days in the stroke center <u>that first week in November 2017,</u> trying to abide by all the <u>University's and Harborview policies changed just for her, and Roland's mandates.</u> Brzycki felt overwhelmed, anxious, panicky, humiliated, harassed, and felt her position was demeaned in the center as further retaliation by Tricia Roland. Now supported by the stroke center director, Dr. Tirschwell as well. <u>Brzycki was placed back on medical leave</u>. Aside from that brief  few days in <u>November 2017</u>, Brzycki never returned again to full time employment at Harborview Medical Center.

128   It is noted that Dr. David Tirshwell, Kelly Paananen, and Kathy Hare admitted that one of their complaints or concern was Brzycki's notes/documentation were too long and took too much of her time.

129   <u>May 17, 2016</u> email with Dr. Tirschwell and Dr. Becker demonstrated that at that time, <u>Brzycki asked the stroke center directors and stroke center manager for their input. Brzycki also asked if they agreed with her current practice.</u> The email was well received, and ideas

provided by Dr. Kyra Becker asking Brzycki to consider "gray areas" of her work. Brzycki did not have a job description.   (Exhibit 110, UWMB 000707, UWMB 000708, UWMB 00709. Exhibit 118).

130   Based on Vicki Johnson 11/2015 assessment (UWMB 003071 line 7, UWMB003072 line 5), Johnson was the one who insisted that Brzycki's notes to be longer and more detailed to properly bill for the clinic visits, per UWMC compliance policy.

131   Based on the December 5, 2016 University of Washington compliance audit, Brzycki was found to be "100% compliant with her clinic notes and documentation needed for proper billing", but the investigation continued with allegation proving false in Exhibit 112.

132   Ms. Brzycki received over 70 patient satisfaction "WOW" cards from patients, their families, and caregivers. Dr. Brzycki received positive emails feedbacks and compliments from stroke center neurologists, nursing and support staff. Nola Balch, Kathy Hare, Paananen, and Tricia Roland were aware of the cards and positive feedbacks, but did not consider them in their investigations.

133   The fact regarding Vicki Johnson requesting that Brzycki notes/documentation needing to be more detailed for billing (UWMB 003071 line 7, UWMB003072 line 5 ) were known by Kathy Hare, the stroke program directors, and the stroke program manager Tricia Roland when Roland initiated her investigation and gave the notice to Brzycki on November 17, 2016  ( See UWMB 003071 line 7, UWMB003072 line 5 ).

134   Harborview Medical Center HR/administration team, the stroke program manager and stroke program Directors were all aware on November 17, 2016 when the investigation was launched, that Ms. Brzycki was working in the stroke clinic on Tuesdays and Fridays (5 patients were scheduled for Tuesdays and 5 for Fridays, with Thursday for overbook 2-3 patients). That

team was aware that Brzycki prepared for all the patients scheduled to see her after their hospital discharge (from UWMC, HMC, and other UWMC facilities). Patients were scheduled by the call center and by the stroke clinic PCC, Tracy Ezell. Whether patients showed up or not (the stroke clinic had a " some no shows "), preparation were necessary for each and every patient – to ensure a safe health outcome and follow up needs. See midline section of  UWMB 003013.

135    Brzycki was asked by Tricia Roland, the stroke program manager "to limit preparation for the stroke patients" post-hospital discharge clinic visits. (See UWMB004459).

136    Documents: MB 000376, MB000377, Exhibit C, Exhibit D, and Exhibit E (second page of this exhibit is a time stamped copy of Brzycki's November 2016 Microsoft outlook detailed schedule, time stamped November 14, 2016 at 06:00 am with Brzycki's name on the calendar), were at all times readily available to Ms. Roland, Kathy Hare, and Kelly Paananen, David Tirshwell, and Kyra Becker before the November 17th investigation was launched – These documents provided a detailed account of Brzycki's work schedule, when she was able to round, document notes, perform follow ups, and other duties. These documents provided how she spends her hours. No feedback was ever provided to Brzycki.

137    It is a fact that the stroke program manager, HR specialist Nola Balch,  Kathy Hare, and Director of Healthcare Specialist Kelly Paananen – All were aware on November 3, and November 14, 2016, that Ms. Brzycki was "clocking out while in her office, and working off the clock while sitting in her office" ( Exhibit 121).

138    Ms. Brzycki worked sometimes 11.5 hours and only paid for 8 hours (UWMB 004459). This occurred because Ms. Roland stated that Brzycki was not allowed to have overtime pay for her work. Roland's administration team were all aware of this fact when the November 17, 2016 investigation was launched. Brzycki continues to contact the fiscal Analyst

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

to make sure she was not paid overtime and upset Tricia Roland's administration team.

139   Kelly Paananen forwarded email 'exhibit 121' to the above individuals, the same day she received that email on 11/14/2016. No guidance or help was provided to Ms. Brzycki. No one in Harborview administration, or HR offered to address the situation to pay Ms. Brzycki. It is a fact that no one in HR discussed any payment for those hours and times that Brzycki sat in her office working "off the clock to get her job done". See Exhibit 121. See M. Brzycki testimony page 215, line 5-14. Page 218. See UWMB 004459, (Also see Paananen Deposition 11/12/2019: Page 67 line 1-9).

140   UWMB003090 document: University of Washington policy is that outpatient medical providers have 72 hours (3 workdays) to complete their notes and documentations. Brzycki's notes were always submitted on time until December 2016 - February 2017 when she was placed on medical leave. Administration mandating practice imposed on Brzycki to finish all her notes by end of clinic day was contrary to University of Washington policy.

141   The UWMC/Harborview stroke program manager changed the UWMC policy and mandated that Dr. Brzycki finish all her documentation/notes on HMC/UWMC post-stroke patients at the end of each clinic day, even on days with conferences and meetings. Kathy Hare who is Roland's boss, HR specialist Nola Balch, and the director of the HCS Kelly Paananen were all aware that Ms. Roland did not provide overtime to Brzycki, per Union (SEIU1199) collective bargaining agreement.

142   Brzycki was given these adjustments to UWMC policies made by Roland, after the November 19, 2016 UCIRO complaint Brzycki told Roland that she made and the HR complaint Ms. Brzycki made on 11/18/2016. This mandate was re-enforced in February 2017 and on April 21, 2017. The UWMC policies were not altered or adjusted for any other HCS/staff

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

in the 2 stroke clinics or any UWMC/HMC specialty at Harborview. Dr. Will Longstreth supervised all provider's notes in the neurology/stroke center. He never reported any complaints regarding Brzycki's documentation notes.

143     Contrary to statements from Tricia Roland (O'Donohue), Nola Balch, Kelly Paananen, and Kathy Hare – documented emails and their own testimonies have demonstrated that these individuals knew prior to the November 17, 2016 investigation that Brzycki did not have a job description, did not have a performance review, was  "clocking out and working off the clock while sitting in her office, documenting her notes working off the clock prior to clocking in. They knew Brzycki was working off the clock and remotely nights and weekends unpaid as well, covering for neurologist who were on vacation, when stroke center was short-staff, and that she told them she had an encrypted USB drive to document her notes at home at nights and weekends. The "off the clock hours totaled hundreds of hours". (See Hare, Balch testimony, and Paananen testimony on 11/12/2019, including page 67 line 1-9).

144     University policy and expectation is that all employees will receive a job description and a yearly performance review.  Brzycki did not have a job description to help clarify her role, duties, and what was expected from her until one was written in March 2017 and given to her in April 2017 - Two and one half years after starting work in the stroke center. According to available documents; and testimonies from Tricia Roland (O'Donohue), Kathleen Hare, Kelly Paananen, and Nola Balch, Brzycki never received a performance review during her time working in the Stroke Center to help her with expectations and to help her succeed in her role as an HCS for the UWMC stroke center at Harborview. According to Nola Balch's testimony starting on page 47, Tricia Roland looked for and did not find any Job description for Brzycki in October 2016. See also Nola Balch testimony page 48, line 13 – 15. See Exhibit 55,

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

and Roland page 50, page 51.

145    Three Neurology Health Care Specialists (<u>Anna Krumpe, Mary Lou Willis, and Lynne Smith</u>) worked with stroke center patients in the hospital, and primarily inpatient and in the Stroke Clinic; all three were White and of American national origin. Unlike Brzycki, all the 3 Health Care Specialist/ARNP had a job description. Unlike Brzycki, they received a yearly performance reviews, and unlike Brzycki the HCS at Harborview stroke clinic/UWMC were never mandated to 'finish all their notes at the end of every clinic day'.  Unlike Brzycki, these other HCS were allowed overtime and did not have to "punch out and work off the clock while sitting in their office, in order to finish their work". Unlike Brzycki, these individuals all received what they needed from UWMC and HMC, to be successful in their job role as a HealthCare Specialist at Harborview Medical Center.

146    <u>UWMB004458</u>: This document showed that Brzycki clocked in at 06:04 am and charting/documenting on many patients. Brzycki worked until 04:55 pm. She was paid for 8 hours. Brzycki was stressed about 'being fired and being set up for failure'. Brzycki felt retaliated against and was overwhelmed when mandated to complete all her documentation at the end of clinic day, the same day she returned from medical leave on February 3, 2017.  (UWMB 004461)

147    Anna Krumpe (stroke clinic HCS) sent an <u>email in February 20, 2017 to Tricia Roland</u>, Kathy hare, Kelly Paananen, Dr. Tirshwell and Creutzfeldt, Tracy Ezell, Crystal Kelly and others. A response was sent from the stroke clinic lead Crystal Kelly. This document clearly demonstrated that Brzycki was in fact "seeing 5 patients on Tuesdays and 5 patients on Fridays". The document further detailed that Brzycki had to perform follow ups after each clinic day. Anna Krumpe's question to the many recipients was <u>"Who will be responsible for follow up phone</u>

calls, test results, forms to fill out for patients, and all the other after clinic stuff?". See UWMB 009631, and UWMB 009630.

148 <u>UWMB004459</u>: Document showed Brzycki was in fact reviewing and helping with the "EPIC in-baskets that belonged to the neurologists in the stroke clinic and in the stroke center". She was also asked to refill medications for the stroke neurologists and was filling out forms for the neurologists in the center as well. See Exhibit C, UWMB 004458, and UWMB 004459.

149 Brzycki was asked by Tricia Roland, the stroke program manager, to limit preparation for patient clinic visits. (See UWMB004459).

150 <u>UWMB009825 and UWMB009826: These documents from 12/6/2016</u> demonstrated a clear description of Brzycki's activities after each patient clinic visits. The documents described patient diagnostic reviews needed after clinic, anticoagulation follow ups, stroke education, and follow up calls to specialist (such as cardiology) after clinic visits, regarding patients. This documents also demonstrated Brzycki was seeing patients outside of HMC/UWMC per stroke neurologist's requests.

151 Tricia Roland (now O'Donohue), did not want Brzycki to access patient charts with issues or questions brought up in the in-baskets by the resource RN, or the 5 stroke clinic nurses who triaged patients calls from the EPIC in-baskets, for the stroke center". It is a fact that during the follow up investigation (<u>On day 2 of the investigation</u>) The program manager, Tricia Roland  was  preventing and mandating that Brzycki not access certain patient charts. Roland brought up several charts (17 of them) to the investigation in February 2017. Her repeated statements were "why were you in these charts?" You should never have accessed these charts. See Roland testimony page 123, line 11-25.

152     The fact is, <u>during the investigation Roland was told that Brzycki had a right to be in those charts in order to help the neurologist or staff with their issues inpatient or in the "EPIC In-Basket".</u> See also Roland's admission during her testimony of that fact (page 124, line 14 – 20. Also Kelly Paananen stated – Brzycki as the outpatient HCS for the stroke center, could access these charts to help solve any issues or concerns for the patients and to help coordinate follow up care. See Roland testimony page 123, line 11-25. See UWMB004458, UWMB004459. Also see Exhibit 95.

153     In the Job description <u>written in March 2017</u> and given to Brzycki in April 2017, <u>Brzycki was asked to work as a "Back up nurse/RN"</u> in addition to her job as a Healthcare specialist. The stroke center previously had 1 stroke resource nurse often serving a "back up nurse part-time or per diem".  No other Healthcare Specialist were required to work as a "back up RN" in their job description at UWMC/HMC.

154     Tricia Roland (O'Donohue),, Kathy Hare, and Nola Balch from HR, were all aware <u>in November 2016</u> of Brzycki's complaints regarding "Prejudice, harassment, threats, bullying, and work stress". Kim Francis interviewed Roland and Hare regarding "harassment and mistreatment" which was also not an accurate description of Ms. Brzycki's complaint on 11/18/16.

155     Tricia Roland (O'Donohue), Nola Balch, Kathy Hare, Kelly Paananen, Darcy Jaffe, and others were all aware of Brzycki's <u>complaint of discrimination on February 14, 2017</u>.

156     During the second part of the investigation, <u>in February 2017</u>, Brzycki was asked about why she wrote that letter on February 14, 2017. Brzycki repeated what she stated in that email where she described feeling distressed, her career threatened, and discriminated against. Brzycki again discussed how things could have been solved differently,  if a job description was

provided for guidance, and meetings were set up to include her. (See Tricia Roland's typed investigation notes).

157    Prior to launching the November 2016 investigation, Harborview HR Nola Balch and Kathy Hare were aware that Stroke staff were working remotely. Dawn Drury was clocking in and in fact working 'on the train 1-2 hours prior to coming in the office'. Vicki Johnson also did the same and approved. (Abeba "Abby" Tesfamarian testimony page 52).

158    Prior to the November 2016 investigation, Kathy hare, Nola Balch, and Kelly Paananen were aware that Kelly Paananen previously told Ms. Brzycki not to "perform stroke resource nurse/RN duties, or clerical/secretary duties"(See Exhibit 116, UWMB 002950, 2951).

159    Prior to the investigations, Tricia Roland told Brzycki not to attend stroke radiology rounds, lectures, and webinars. Tricia Roland stated in Nola Balch investigation notes that she did not know I was going to these lectures and webinars.

160    Prior to launching the investigation, Tricia Roland, Kathy Hare and Nola Balch was aware that the stroke resource nurse Tammie English thought that "Mattie Brzycki is an excellent resource for staff when they had questions" (see document UWMB3752).

161    Prior to the 3 investigation interviews, Tricia Roland and her team in administration were aware that the stroke clinic staff including the managers Crystal Kelly and Aaron Guzik felt that Brzycki was good with patient care, and Brzycki's performance was "unremarkable" which in medicine refers to "being normal, without any negative complaints" (see document UWMB005370).

162    Prior to launching the investigation in November 2016, HR Nola Balch, Kathy Hare, and Tricia Roland were aware of:  Brzycki feeling  discriminated against, she did not have a job description,   never received a performance review while in the stroke center, never had a

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

prior corrective action plan against her, she received positive reviews in her previous position as a PACU RN at HMC, positive feedback from patients, nursing staff and physicians, she worked off the clock unpaid, was not allowed to accrue overtime but need to finish all her work, and Brzycki contacting UCIRO in November 2017. Again, according to Nola Balch's testimony starting on page 47, Tricia Roland looked for and did not find any Job description for Brzycki. See also Nola Balch testimony page 48, line 13 – 15.

163     Prior to the investigation Brzycki did not have any corrective action since her employment started at Harborview in October 2011.  (Balch page 139, Line 22-25).

164     Prior to the investigation:  Brzycki developed an algorithm with assist from Alexis Drum, to help with the center and clinic working together. The workflow showed solutions to issues the stroke center staff and the stroke clinic staff were having. This algorithm also helped the "call center' at HMC and UWMC. It was still in use 2016 – 2018. (See document UWMB 003784).

165     Prior to the investigation, Tricia Roland told Brzycki not do overtime (See UWMB 003817). But Brzycki had to finish her work "off the clock", while sitting in her office.

166     Prior to the investigation, document UWMB 5372 (mid paragraph), demonstrated that the program manager, Tricia Roland knew that Brzycki was scheduled by the hospital to see 12 – 14 patients per week in the stroke clinic.

167     This document UWMB5372 (mid paragraph), contradicts what the administration team (Roland, Hare, Balch, and Paananen) previously stated during the investigation regarding Dr. Brzycki's schedule and the amount of patients scheduled with her in clinic. This document discussed 12 – 14 patients scheduled with Brzycki per week. This also contradicts Dr. Tirschwell recollection of the patients scheduled in clinic as well. (UWMB5372).

168     <u>All of the above facts</u> were known by the administration team and the stroke director when the Step C action plan (one step from termination), was to given to Brzycki.

169     Based on their testimony, Kathy Hare, Kelly Paananen, and Nola Balch were also <u>aware of all these facts from 2015 to 2017</u>. Tricia Roland was aware after she started working in the stroke center. Roland and Hare Testimony were that <u>they "wanted Brzycki fired",</u> instead of providing the tools Brzycki needed, after all these years, to help her succeed in her role. (Hare testimony page 75, line 6 – 25, page 76 line 4-19).  Roland Testimony page 139, line 11- 21. See also Roland testimony  regarding a lack of job description - page 50, page 51, and testimony on page 53 line 1- 25.

170     Ms.  Tricia Roland, Nola Balch, Kathy Hare, testified that "there were concerns of loss of funds" when the fact is Brzycki <u>worked for hundreds of hours unpaid off the clock</u>. Some of these hours were spent when the center was short-staffed, when she was mandated to "punch out while sitting in her office working", when she had to ensure all her work was completed for the HMC patients, and she was "not allowed to work overtime" like her counterparts.

171     Brzycki made Roland aware that she was going to complain to the state back in 2016. Brzycki eventually filed unpaid wage claims in April 2017 with the Department of Labor and Industries for the hours she was forced to work off the clock in her office, without lunch on clinic days, and off the clock when the center was short staffed. (L&I complaint No. 116123.)

172     <u>In September 2017</u>, Brzycki had accepted a conditional offer of an ARNP position with the Veterans Affairs Puget Sound Healthcare System in Seattle, Washington ("VA").  The offer was contingent on completing a federal background check and obtaining privileges at the VA— a process that was expected to take several months. .

173     <u>September 2017</u>: The stroke center interviewed and hired Kelsey Hanson as their

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

new Healthcare Specialist. The plan was for Hanson to start between November and January 2018. Hanson started working in the center in November 2017.  (See also Roland testimony page 181, line 16 – 25. See Exhibit 101).

174     Brzycki did not get an opportunity to have a grievance meeting with her union representatives.

175     The grievance meeting: Kathy Hare would have been responsible to hear the grievance, if Brzycki did get a grievance meeting (Kathy Hare testimony page 71, line 7-17). Kathy Hare is Tricia Roland's supervisor.

176     Kathy Hare, also participated in the issuing of the step C to Ms. Brzycki and "was recommending that Brzycki to be fired", even when Brzycki had no job description for 2.5 years, no performance reviews, or prior corrective actions in her records at Harborview. (See Kathy Hare testimony (page 75, line 6 – 25, page 76 line 4-19. Hare would have presided over Brzycki's grievance with her union, and strongly believed Brzycki should be fired - page 75, line 12-18).

177     Tricia Roland, aware that Brzycki filled another EEOC charge in August 2017. Roland testimony on October 31, 2019 was that she "recommended that Brzycki to be fired". So, Roland continued to plan and searched for more reasons and information "in case we ever needed them, to initiate  more investigations", ( See Roland page 177, line 4 -7 and EXHIBIT 100), instead of helping Brzycki to succeed in her role, when she came back from medical leave.

178     The plans for more investigations were made by Tricia Roland and Nola Balch while Brzycki was on medical leave in August 2017 and continued until November 2017. (UWMB008214, UWMB008215, UWMB 008216, UWMB 008217); Balch testimony regarding more investigations on page 155 line 1-21. See also Roland testimony page 11-25, and page 178

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

line 7-17.

179     Brzycki was placed on medical leave 4 times (December 2016, January 2017, April 2017, and July 2017), due to "increase anxiety, panic disorder, and blood pressure issues related to her work environment.

180     Brzycki never had any prior corrective action since her employment started at Harborview in October 2011.   (Balch page 139, Line 22-25). Brzycki did not have a job description until April 18, 2017.  Brzycki never received an employee review while employed in the stroke center.

181     In October and November 2019 testimonies by Kathy Hare, Nola Balch, and Kelly Paananen,   a transfer could have been facilitated by Paananen, Hare, or Balch when "Brzycki developed health issues related to work environment in 2016", prior to the corrective action (Step C). Brzycki was then later unable to transfer to another department or any UWMC facility due to the Step C in her file. * See testimonies from: Kathy Hare page 117 line 15-25. See Kelly Paananen deposition 11/12/2019 - page 120, line 5 to 22). Nola Balch: page160 line 21-25; page 161 line 21-24, and page 162 line 3-25. Brzycki was unable to transfer to another position at UWMC/HMC

182     Dr. Brzycki could not work in the stroke center either, due to "increase anxiety and high blood pressure issues affecting her health, caused by work environment" described by her 3 medical providers. She accepts Kim's Francis suggested statement in their email conversations that "she resigned her position at Harborview effective November 30, 2017". Brzycki's health insurance was expired on that same day as well.

183     January 2018: After resigning from Harborview, Brzycki began working for the Veterans Affairs (Puget Sound Healthcare System) .

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669

184     Brzycki's monthly salary at Harborview in 2017 was $8,826.00.

185     McLauchlan investigated Brzycki's EEOC and the second UCIRO complaint, interviewing nine witnesses and reviewing documents. She reported her findings to the EEOC and to UWMC management in December 2017.

PLAINTIFF'S STATEMENT OF
FACTS
CASE NO. 2:18-CV-01582-MJP

Dr. Brzycki, Marthilde
Seattle, WA 98178
206.457.9669